423 So.2d 1323 (1982)
BOARD OF ALDERMEN OF TOWN OF BAY SPRINGS, Mississippi, et al.
v.
J.I. JENKINS.
No. 54001.
Supreme Court of Mississippi.
December 15, 1982.
Rehearing Denied January 12, 1983.
William R. Ruffin, Bay Springs, for appellants.
Tom Tullos, Bay Springs, for appellee.
Before WALKER, P.J., and BROOM and HAWKINS, JJ.
HAWKINS, Justice, for the Court:
The Town of Bay Springs and a number of its citizens have appealed from a judgment of the Circuit Court of the Second Judicial District of Jasper County reversing an order of its Mayor and Board of Aldermen refusing to rezone certain realty of the appellee Mr. J.I. Jenkins to a commercial classification.
The only issue we address on this appeal is the sufficiency of the evidence supporting the order of the Mayor and Board of Aldermen of this municipality. Finding this order to be supported by law and the evidence before the Mayor and Board, we reverse and render.

FACTS
In 1971, Bay Springs adopted a zoning ordinance, which has been in effect ever since.
*1324 In November, 1980, Mr. Jenkins filed a petition with the Planning Commission of Bay Springs to rezone all of his realty from R-1 residential to C-2 commercial. There is no plat in the record and the land description fails to give the acreage. Under the ordinance, zone C-2 is a central business commercial district classification, authorizing virtually every type of commercial and professional establishment. No side or rear yard is required; only a front yard building setback line at least thirty (30) feet from the street right of way is required in property zoned C-2.
Numerous neighborhood landowners objected and on December 11, 1980, the Commission by a 6-5 vote denied Mr. Jenkins' request. Mr. Jenkins appealed to the Mayor and Board of Aldermen, where a hearing was conducted on January 20, 1981. Mr. Jenkins, his son, a real estate broker, and the city clerk testified at this hearing.
Mr. Jenkins testified that the land was being prepared for a restaurant type of business. The realty is located on the west side of Highway 15, a main artery of traffic in the town. Three rental homes are now on the property, two of which are in very poor condition, while the third is in a fair condition. Mr. Jenkins testified that there is no chance to sell the property for residential purposes because the realty was commercial property. He stated other commercial classifications were not suitable to him. C-3 classification requires an offset of fifty (50) feet for the front yard, which in his opinion would waste too much of his land. C-2 "modified" would require an offset of one hundred (100) feet. C-1 "modified" was not discussed at the hearing, Mr. Jenkins stating he was not familiar with the C-1 requirements.[1]
Mr. Jenkins stated the side yard requirements caused an unnecessary loss of the use of his property. He was of the opinion that no adjacent property owner would benefit from the existence of side yards.
John Jenkins, the son of Mr. Jenkins, discussed various commercial sites near the location of the proposed realty to be reclassified. All were within 6/10 of a mile from the property. He listed Depositor's Savings and Alexander Motor Company.[2] Also listed by John Jenkins were the Bay Springs Equipment Company, an auto parts store; the Bay Springs Animal Hospital; the Jasper County Florist; a filling station; and the Bay Shopping Center. With the exception of the Depositor's Savings, all these establishments were shown to be less than thirty (30) feet away from the right of way of Highway 15. Depositor's Savings was thirty-five (35) feet from the right of way. On the same side of the highway as Mr. Jenkins' property were Depositor's Savings, the tractor company, the animal clinic, the Forestry Commission Building, the florist's business, the land owned by the Jasper County Bank, the filling station, and the shopping center. The Cox family owns a home which is surrounded on all sides by the property sought to be reclassified.
A real estate broker, who was also a licensed appraiser, testified that it would be difficult for this property to be sold as residential because of the highway traffic noise, as well as the topography of the land, and that only two portions of the realty could be used as residential. He also stated that the area had changed in the nine years he had lived in Bay Springs in that commercial activity had grown. It was the opinion of the realtor that the highest and best use of the property was commercial. It was also his opinion that rezoning would have a good effect on the Cox property, and that harm could only come if the business establishments to be placed on the realty were auto repair or service stations. The realtor also stated there was no benefit to having side yards. He was of the opinion that Highway 15 is an area where growth will probably occur and that the classification of *1325 the realty as residential would ruin its value.
The city clerk testified that the shopping center was not in existence at the time the zoning ordinance was adopted. He further testified that before zoning no business establishments were located south of the property. He also testified that the land lying due north of the property was zoned C-3, and that the land lying southeast of the property (the bank) was zoned C-2 "modified".
Property owners in the area voiced statements at the hearing before the Mayor and Board of Aldermen that they did not object to some commercialization of the area, but that the zoning requested by Mr. Jenkins would allow any type of commercial property to be located thereon and they objected to that as it would materially affect the value of their residential property across the highway. They stated that in the past they had agreed to some commercialization of the property with the understanding it would be restricted, but that they were being penalized for having agreed to any change in the rezoning in the past. They stated they wanted to keep an environment around their homes with an atmosphere of some peace and quiet. Mr. and Mrs. Cox also objected to the rezoning. Their objection had an additional aspect: that there would be no side yard required in the set-back lines.
Following the hearing the Mayor and Board of Aldermen entered the following order:
ORDER ACCEPTING RECOMMENDATION OF THE PLANNING COMMISSION AS TO THE APPLICATION OF J.I. JENKINS TO REZONE CERTAIN LANDS
On January 20, 1981, the application of J.I. Jenkins to rezone certain lands owned by him and located West of Highway No. 15 and North of Bay Shopping Center and more particularly described in his application was heard by the Mayor and Board of Aldermen by way of appeal from a recommendation by the planning commission that the lands be not rezoned.
Mr. Jenkins was present in person and represented by an attorney and there were numerous protesters also present.
Objection in writing had been filed by 100% of the owners of the lands directly opposite to the lands sought to be rezoned and extending 160 feet from the street frontage of the said opposite lots and, as required by Section 17-1-17, Mississippi Code 1972, as amended, the proposed amendment would require favorable vote of two-thirds of the aldermen.
Evidence was offered on behalf of Mr. Jenkins in the form of witnesses. Mr. Jenkins' son testified that the buildings very near to the lands in question and some as far away as 3/10ths of a mile were constructed closer to the highway right-of-way line than is allowed by the town ordinance. This is true. However, the buildings noted by the witness were constructed before the zoning ordinance went into effect.
Mr. Jenkins himself testified as did a local realtor that the value of the lands of Mr. Jenkins for residential purposes is not as great as the value would be for commercial purposes. The Board has no doubt but what that is true. However, the Board well knows that the value of the residential lots opposite to and adjacent to the lands in question would be greatly reduced by the rezoning of the lands in question commercial as requested by Mr. Jenkins.
The realtor testified that in his opinion traffic and noise along Highway 15 and in the area of the lands in question would not significantly increase if the lands were rezoned commercial. The Board does not share the opinion of this witness for, by the very nature of commercial property, the traffic and noise level would be increased.
It should be noted that within the lands sought to be rezoned there is a residence and lot owned by Mr. and Mrs. Cox, who have objected to the rezoning. Mr. Jenkins' application was that the lands be rezoned C-2, which zoning would require *1326 no side yard set-back lines, and the same would allow the owners of such property to construct buildings up to the property line of the Cox. The realtor testified that buildings jammed up against the property line of Mr. and Mrs. Cox would not in any wise diminish the monetary value of the Cox property and would not in any wise interfere with their use of the same. Again, the Board does not share the opinion of the realtor for reason that by the very nature of C-2 zoning, there is no provision for side yard set-back lines, lands adjacent thereto would be diminished in value.
Testimony was also offered that the lands were in reality commercial in nature rather than residential in nature, reasons having been given were that the lands were adjacent to the Bay Shopping Center and nearby on the North was a florist which, incidentally, is likewise owned by Mr. Jenkins, and further that with the exception of the Cox's home, there were only two houses and those being rental houses which were not in too good state of repair. Both of these rental houses, however, are owned by Mr. Jenkins, and remain in such state of repair as he allows.
It is worthy of note that Bay Shopping Center is located in an area zoned C-1 modified which was designed for the purpose of allowing growth and development of the Bay Shopping Center. The florist referred to and owned by Mr. Jenkins and located North of the lands in question were operated as a commercial establishment at the time that the zoning ordinance went into effect.
While there were many persons present objecting to the rezoning of the lands in question, Mr. D.J. Dear, who owns lands directly opposite the lands in question, spoke on behalf of all of the objectors reminding the Board of the residential nature of the area, the quality of life presently in the area and the necessary ills that accompany use of lands for commercial purposes, especially noting the night time activities that would accompany commercial development as well as the glare and noise and urging upon the Board the proposition that the lands were residential in nature.
Mr. and Mrs. Cox, above referred to, personally voiced their objection to the rezoning and to the absence of side yard set-back lines in C-2 as requested by Mr. Jenkins.
At the close of the hearing, the matter was taken under advisement for consideration and for ruling at the regular meeting of the Mayor and Board of Aldermen to be held February 3, 1981.
The law places upon the petitioner the responsibility of proving that there was some mistake in the original zoning, or that conditions of the neighborhood had changed so as to require a rezoning of the lands in question. The issues were presented to the Planning Commission composed of eleven prudent and reasonable citizens of this town who heard and considered the matter and determined that the lands should not be re-zoned.
The Zoning Ordinance was enacted to promote the general welfare of the citizens and one of the things it was designed to do was to prevent over crowding of land and mixing of land uses. Also, in Sec. 102 of the ordinance it is stated that the regulations contained in the ordinance "have been made with reasonable consideration, among other things, to the character of the zoning district and its suitability for particular uses and with the intention of conserving the value of buildings and encouraging the appropriate use lands throughout the town."
The zoning district designated "C-2" is by definition "Central Business Commercial" and carries with it an assortment of uses, a substantial amount of which are night-time uses and are, by their very nature, inconsistent with residential use. Further, such district requires only a thirty foot set-back line from the highway right-of-way and requires no side or rear yard set-back lines. These zoning provisions, in themselves, are inconsistent with residential use, and it appears that the *1327 design of the ordinance was that such zoning be reserved for the central commercial business use.
This board is of the opinion that some lighter or daytime commercial zoning may be in order, but Mr. Jenkins has not asked for such zoning, but has applied for "C-2" District re-zoning, and that is what the board must act upon.
The applicant has made no allegation or attempted to show that there was any mistake in the zoning ordinance concerning the lands in question, and for the reasons hereinbefore set out we find that the evidence does not show and we have not found that conditions have changed in the community in question that would make it to the best interest of the Town of Bay Springs to re-zone this property "C-2".
It should be remembered that the Mayor and Board of Aldermen consists of men of the town not trained in the law, who are making a conscientious effort to do what is best for the town and its citizens, and we have taken into consideration things we know to be facts and things dictated by common sense. We take very seriously the zoning law, which has the effect of dictating to some degree what a person may do with his own property, but, on the other hand, we recognize the espoused purpose and design of the ordinance to protect the character of a community. In this instance we do not find that public necessity, convenience, or general welfare dictate or indicate that the particular zoning requested should be allowed.
For the above reasons, the ruling of the Planning Commission in this matter be and the same is hereby accepted and the application of Mr. Jenkins as made be and the same is hereby disallowed, and the same is so ordered here in regular session on this 3rd day of February, 1981.
The circuit judge found that the petitioner had met his burden of proof by sworn testimony, and that the witnesses he presented were not cross-examined. The court further found the objectors offered no sworn testimony in opposition, and therefore the testimony of the petitioner was not denied. It was upon this basis that the circuit judge reversed the municipality's decision.

LAW
In our view the circuit judge placed too limited a view upon what the Mayor and Board of Aldermen could consider in reaching a decision upon the petition to rezone. We believe the better view is stated in R. Khayat and D. Reynolds, Zoning Law in Mississippi, 45 Miss.L.J. 365, 372-73 (1974):
The hearing should be an informal, nonadversary proceeding in which the rules of evidence are not applicable. This is consistent with the basic policy consideration underlying the requirement of the hearing; i.e., to provide the governing authorities with as much information as possible concerning regulations which vitally affect the community at large as well as individual landowners... . Practically speaking, it would be extremely difficult to conduct a formal hearing in the emotionally-charged situation which so frequently is found at a zoning hearing.
See also R. Anderson, 3 American Law of Zoning § 16.24, at 211-12 (1968); D. Hagman, Urban Planning and Land Development Control Law, § 122 (1971); A. Rathkopf, 2 The Law of Zoning and Planning 44-1 to -2 (3rd ed. 1964); E. Yokley, 2 Zoning Law and Practice § 13-9, at 93-94 (3rd ed. 1965).
In rendering the municipal order, the Mayor and Board of Aldermen were authorized to consider the statements expressed by all the landowners at the hearing, as well as to call upon their own common knowledge and experience in their town. It is manifest that the Mayor and Board took into consideration all statements, both sworn and unsworn, and their common knowledge and familiarity about their small municipality, in reaching their decision. We believe this method to be sound and practical, and courts should respect *1328 such findings unless they are arbitrary, capricious, and unreasonable.
We have set forth the entire order of the Mayor and Board, which to us appears to have shown these officials' concern for, interest in, and fairness to all parties concerned. We certainly cannot say their decision was arbitrary, unreasonable, or capricious.
Beyond this, we have often stated that before property is reclassified from one zone to another, there must be proof either (1) that there was a mistake in the original zoning, or (2) the character of the neighborhood has changed to such an extent as to justify rezoning and that public need exists for rezoning. See City of New Albany v. Ray, 417 So.2d 550, 552 (Miss. 1982), and cases therein cited.
The petitioner in this case failed to prove any public need to have his property rezoned to an unlimited commercial classification.
The Mayor and Board quite properly affirmed the finding and recommendation of its planning commission.
We therefore reverse and render, reinstating the February 3, 1981 order of the Mayor and Board of Aldermen of Bay Springs.
REVERSED AND RENDERED.
PATTERSON, C.J., SUGG and WALKER, P.JJ., and BROOM, ROY NOBLE LEE, DAN M. LEE and PRATHER, JJ., concur.
BOWLING, J., takes no part.
NOTES
[1] C-1 zoning was the subject matter of the Planning Commission's suggestion of a compromise. C-1 "modified" also requires more setback footage than does C-2, C-1 "modified" requiring a setback footage of fifty (50) feet.
[2] The Depositor's Savings and the motor company were at their locations before the zoning ordinance was enacted.