443 So.2d 1173 (1983)
WOODLAND HILLS CONSERVATION ASSOCIATION, INC., Appellant,
v.
CITY OF JACKSON and H.C. Bailey Company, Appellees.
No. 54514.
Supreme Court of Mississippi.
December 7, 1983.
*1175 R. James Young, Wright, Overstreet & Young, Jackson, for appellant.
James A. Peden, Jr., Stennett, Wilkinson & Ward, Shelby R. Rogers, Sr., Gay Dawn Horne, Jackson, for appellees.
Before PATTERSON, C.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This is a rezoning case. The Jackson City Council has enacted a rezoning ordinance which reclassifies a seven acre tract in the northwest quadrant of Lakeland Drive and Interstate Highway 55 from limited residential, R-1A and R-5, to general commercial, C-3.
Woodland Hills Conservation Association, Inc., an organization of homeowners residing generally north and west of subject property, appealed to the Circuit Court of the First Judicial District of Hinds County, Mississippi, which on November 24, 1982, affirmed. From that ruling, Woodland Hills has appealed to this Court.
In zoning matters the Jackson City Council exercises powers generally legislative in nature. The scope of judicial review is accordingly restricted. The matter of whether the property in question should have been rezoned was fairly debatable. No objective observer could say that the City Council's decision was arbitrary, unreasonable or capricious. We affirm.

II.

A.
This rezoning action concerns a seven acre tract of land in the City of Jackson, Mississippi. The property is situated generally in the northwest quadrant created by the intersection of Lakeland Drive and Interstate Highway 55. The property is on the north side of Lakeland Drive, across the street so to speak from St. Dominic's Hospital.
Prior to the October 14, 1981, advent of these proceedings the subject property included three separate zoning classifications. See Map attached as an Appendix hereto. A strip fronting on Lakeland Drive was zoned R-5, multi-family residential. A small pocket bordering the frontage road between Lakeland and I-55 was similarly R-5. A landlocked rectangular area in the northern and northwestern portion of the seven acre tract has heretofore been zoned R-1A, single family residential. A part of the land in the southeast corner which borders both Lakeland Drive and the frontage road is presently C-3  general commercial. The proponent has sought to have the entire area zoned C-3.
The dominant zoning of land in this area is commercial. On the south side of the existing C-3 land is another C-3 area located at the northwest corner of the intersection of Lakeland Drive with the West Frontage Road adjacent to I-55 North (also known as University Drive). A combination Gulf service station and convenience store is operating thereon. Immediately to the north and northeast of the subject property is another C-3 area containing Doctors Hospital. (The attached map makes all of this much clearer than can words.)
St. Dominic's Hospital, which is located in a Special Use District, lies across Lakeland Drive to the southeast of the subject property. Located immediately to the west of St. Dominic's Hospital on the south side of Lakeland Drive is additional Special Use District land, owned by the University of Mississippi and vacant at this time. Immediately *1176 west of the subject property on the north side of Lakeland Drive is a relatively small R-5 Unlimited Multi-Family Residential tract containing the Parkview Arms Apartments, to the west of which lies a much larger commercial area zoned C-2, but including two small lots zoned C-1 and C-1A respectively. North of the western portion of the subject property are vacant lots zoned C-1 Restricted Commercial and R-1A Single-Family Residential. To the northwest of the subject property lies the Woodland Hills area zoned R-1A Single-Family Residential.
The city planning department staff found the proposed C-3 development compatible with Jackson's 1974 comprehensive zoning ordinance. Specifically, the department found the proposed rezoning compatible with the adjacent R-5 and C-1 areas. A vacant R-1A lot on the north of the subject property was a landlocked tract which would buffer the proposed development from existing residential lots.
The once residential Lakeland Drive has changed steadily over the years. In this area, it has become a major east-west thoroughfare. Since 1975 there have been eight separate commercial rezonings in the area.
These are:

 REZONING
CASE NO. DATE APPLICANT ACTION 
 1494 2/11/76 Bailey Mortgage Co. R-4 to C-1
 1567 5/17/77 Humana of Miss., Inc. R-1A to C-3
 1574 6/14/77 William O. Marble R-5 to C-1
 1628 12/12/77 Paul K. Lackey R-5 to C-2
 1782 5/21/79 Carroll & Thompson, Inc., R-5 to C-1
 and George R. Day
 1783 5/09/79 Carroll & Thompson, Inc. R-1A to C-1
 1956 12/18/80 Harold T. Whitley R-1A to C-2
 1959 12/19/80 W. Michael Vise and Guy R-5 to C-1A
 T. Vise

Today, if one travels from Old Canton Road along the north side of Lakeland Drive to Interstate Highway 55 North, he will find no single-family residences. The entire strip now houses specialty shops (for example, Ississi, Frances Pepper, Fridge's Fireside Shop, and the Lamp House), apartments, and medical and dental offices.
H.C. Bailey Company holds an option to purchase the seven acre tract in question. Bailey proposes to develop a general commercial complex that will include a hotel, twin office towers, and specialty shops. H.C. Bailey, Jr., applicant's president, outlined before the Zoning Committee his company's considerable experience in developing similar projects. He offered his opinion that there was a community need in Jackson for additional hotel space, office space, and retail shop space.
Mr. Bailey estimated the costs of the proposed development to be $30-40 million. That sum would provide a significant building payroll for the local economy, generate considerable sales tax revenues, and produce a commercial complex that would generate substantial ad valorem taxes year after year. Mr. Bailey also pointed out that the subject property encompassed steeply sloping and uneven terrain, a fact which would make difficult development of the subject property under existing R-1A zoning classifications.
Robert Parker Adams, a local architect retained by H.C. Bailey Company, has designed the proposed complex. He envisions a multi-level complex which would feature landscaping and open space on a plaza level having the same grade as Lakeland Drive, with parking decks underneath. These parking decks would not be visible *1177 from Lakeland Drive. As the site plan shows, there would be parking ingress and egress at three different points.
The hotel and twin office towers would be oriented toward Interstate Highway 55 North and the West Frontage Road (University Drive), not toward Lakeland Drive. The main entrances to the hotel and the twin office towers would be from University Drive thereby avoiding interference with the traffic flow on Lakeland Drive.
Before filing the rezoning application, representatives of H.C. Bailey Company visited "property owners up and down Glen Way" in the Woodland Hills area. They showed approximately twelve (but by no means all) area property owners the development plans and asked for comment. Negotiations ensued and produced a Protective Covenant Agreement. That agreement places a two-story height restriction on the western portion of the subject property. It provides for a landscaped 25-foot buffer strip on the north and west sides of the northwest corner. The agreement further requires a parking screen, compels the construction of an eight-foot solid wall or fence to conceal driving areas on the western portion of the subject property from residential lots to the northwest, and prohibits any building on the eastern portion of the subject property with a height greater than that of the height of nearby St. Dominic Hospital.
Dr. E. Leonard Posey, Jr., a resident of the Woodland Hills neighborhood and a spokesman for several of his neighbors, explained to the Zoning Committee that H.C. Bailey Company had accepted virtually all of the covenant proposals made by neighborhood residents. Dr. Posey stated that, in view of the Protective Covenant Agreement, members of his group did not oppose the proposed rezoning.
The Woodland Hills Conservation Association, Inc., Protestant below and Appellant here, representing 39 percent of the homeowners in the Woodland Hills area, strenuously opposes the C-3 rezoning generally and the Bailey Company's proposal development in particular. This group argues that the value of their residential properties will be negatively affected. They also expressed concern over the impact that the proposed development would have on traffic in the area.
There is at this time daily a heavy traffic flow past the subject property on Lakeland Drive. This makes the subject property unsuitable for development under its present residential classifications. The proposed development does not connect in any way with residential streets in the Woodland Hills neighborhood. It seems unlikely that proposed development will increase traffic flow within Woodland Hills.

B.
On October 14, 1981, H.C. Bailey Company filed its rezoning application with the Jackson City Planning Board. After due notice to all interested parties, the application was heard by the Zoning Committee on November 12, 1981. At the conclusion of the hearing, by a vote of 6 to 0, the Zoning Committee recommended to the parent City Planning Board that the application of H.C. Bailey Company to rezone all the subject property to a classification of C-3 General Commercial be approved.
The full City Planning Board met on November 25, 1981, and by a vote of 8 to 2, concurred with the Zoning Committee and recommended to the Jackson City Council that the subject property be rezoned C-3.
On February 16, 1982, by a vote of 3 to 0, the Jackson City Council adopted the rezoning ordinance under attack here. In an accompanying written opinion, the Jackson City Council explained its action.

BEFORE THE CITY COUNCIL OF THE CITY OF JACKSON, MISSISSIPPI
IN THE MATTER OF THE REZONING APPLICATION OF H.C. BAILEY COMPANY ZONING CASE NO. 2070
FINDING THAT ZONING SHOULD BE APPROVED
H.C. Bailey Company has petitioned the City of Jackson to rezone a large *1178 tract of land located on the north side of Lakeland Drive and west of the I-55 West Frontage Road. The subject property is located across Lakeland Drive from St. Dominic Hospital, which is in a Special Use district, and south of the C-3 General Commercial area containing Doctor's Hospital.
* * * * * *
The proposed rezoning would not introduce any new zoning classification into the neighborhood. The proposed rezoning would simply be an extension of existing C-3 General Commercial areas.
* * * * * *
In that the protestants have complained that the hotel portion of the proposed complex would be four (4) stories high and that the twin office towers would be eight (8) stories high, it is significant to note that there is presently no height restriction on that portion of the subject property zoned R-5 Multi-Family Residential. See Section 602.06.3(6) of the Zoning Ordinance. On that portion of the subject property presently zoned C-3 General Commercial, the maximum height restriction is ten (10) stories, and the Zoning Committee has authority to increase that to fifteen (15) stories. See Section 702.04.2(6) of the Zoning Ordinance.
The architectural design of the proposed complex submitted by H.C. Bailey Company shows careful planning and a concern for aesthetics. For example, parking is to be underground, and the main entrance to the hotel will be off the Frontage Road so as to lessen traffic congestion on Lakeland Drive. Moreover, H.C. Bailey and the owners of the subject property have entered into a Protective Covenant Agreement with residents of the Woodland Hills area to the northwest providing for a landscaped 25-foot buffer zone, screening walls, and a maximum height of two (2) stories on the western portion of the subject property.
Since there will be no means of access from the proposed complex to the residential areas in Woodland Hills, the proposed rezoning should not increase traffic on the interior residential streets in Woodland Hills.
The Jackson City Council recognizes that the proposed development will increase traffic on Lakeland Drive and on the West Frontage Road. However, there is a public need for the proposed development, and the economic and other benefits that will accrue to the City of Jackson from the rezoning of the subject property substantially outweigh the problems which may result from an increase in traffic.
Additionally, the question of traffic congestion and the means by which it must be addressed is not before the Zoning Committee, Planning Board or City Council at this time. This matter as well as other questions involving drainage, fire protection, police protection, etc. will be subsequently addressed before the site plan review committee comprised of appropriate engineers and experts in their field.
The Jackson City Council has listened with understanding and sympathy to the concerns expressed by residents of the Woodland Hills area in protesting the proposed rezoning. While the Council is conscious of the fact that it has a duty to preserve the tranquility of residential neighborhoods, Jackson City Council finds that the rezoning in the present case would have only minimal impact upon Woodland Hills and that the proposed rezoning would confer substantial public benefit upon the entire City of Jackson.
H.C. Bailey Company has met the burden of proof in showing that conditions in the neighborhood of the subject property have changed and that there is a public need for the proposed rezoning. The Zoning Committee and the City Planning Board have recommended that the proposed rezoning be approved. The Jackson City Council, agreeing with this recommendation and finding that the proposed rezoning will be of great benefit to the entire City, accepts the recommendation *1179 of the Zoning Committee and the Planning Board and approves the proposed rezoning of the subject property to a classification of C-3 General Commercial for the construction of a hotel, office buildings, and shopping complex.
Woodland Hills then appealed to the Circuit Court of the First Judicial District of Hinds County, Honorable Reuben V. Anderson, Circuit Judge, whose order of affirmance entered November 24, 1982, provides in pertinent part:
... . and this Court finding that the rezoning of property is essentially a legislative rather than judicial matter, with limited judicial review, Robinson Industries v. City of Pearl, 335 So.2d 892, 895 (Miss. 1976); Adams v. Reed, 239 Miss. 437, 123 So.2d 606, 609 (1960); and this Court further finding that it should not substitute its judgment for that of the Jackson City Council in regard to the wisdom or soundness of rezoning action, Currie v. Ryan, 243 So.2d 48, 51-52 (Miss. 1971); and this Court further finding that appellee H.C. Bailey Company proved by clear and convincing evidence that there had been substantial change of character in the neighborhood of the subject property and that there was a public need for rezoning, thereby meeting the evidentiary burden enunciated in City of Oxford v. Inman, 405 So.2d 111, 113 (Miss. 1981); and this Court further finding that the rezoning action of the Jackson City Council was not arbitrary, capricious, discriminatory, or unreasonable and was, indeed, supported by substantial evidence under the standard set forth in City of New Albany v. Ray, 417 So.2d 550, 552 (Miss. 1982); and this Court further finding that the assignments of error made by appellant Woodland Hills Conservation Association, Inc., are not well taken; and this Court further finding that the rezoning action of the Jackson City Council should be affirmed, ... .
The present appeal has ensued.

III.

A.
The zoning statutes of this state contemplate the adoption by each municipality of a comprehensive zoning plan.[1] The plan should be designed to bring about "coordinated physical development" of the community "consistent with its present and future needs". Miss.Code § 17-1-11(1) (Supp. 1982) [Emphasis added]. Properly designed, the comprehensive plan contemplates a dynamic community. It recognizes the inevitability of change. Its goal is orderly change, balancing the community's growth needs and the individual's interest in using his property as he sees fit.[2] Its calculus is largely utilitarian.
In the end all zoning in this state is for
"the purpose of promoting health, safety, morals, or the general welfare of the community". Miss.Code § 17-1-3 (1972).
These purposes, of course, derive directly from the landmark case of Village of Euclid v. Amber Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). Euclid squarely recognized that the zoning power is within the police powers of the state.[3] Zoning regulations when challenged under the federal constitution were held largely insulated from judicial review. Only where they be

*1180 clearly arbitrary and unreasonable, having no substantial relation to public health, safety, morals, or the general welfare, 272 U.S. at 395, 47 S.Ct. at 121, 71 L.Ed. at 314,
may the judiciary interfere. Euclid further makes clear that where compliance with these standards
"be fairly debatable, the legislative judgment must be allowed to control". 272 U.S. at 388, 47 S.Ct. at 118, 71 L.Ed. at 311. [Emphasis added].
The "purpose" language in our zoning statute, Section 17-1-3, is lifted verbatim from Euclid.[4] As will become apparent, the "arbitrary and unreasonable" and "fairly debatable" language from Euclid have been adopted by this Court as an articulation of our scope of review.

B.
The zoning power has been oft described as a legislative one. The Circuit Judge so called it in his order of affirmance. The label is historically accurate. That it is still functionally accurate, generally speaking, goes far toward explaining why we must affirm this case.
Rezoning hearings are informal. They are de jure non-adversary, though witnesses to the bitterness generated in rezoning fights may demur. Rules of evidence are out of place. Board of Aldermen of Town of Bay Springs v. Jenkins, 423 So.2d 1323, 1327 (1982); Khayat, et al., Zoning Law in Mississippi, 45 Miss.L.J., 365, 372-373 (1974). It is both proper and desirable that rezoning decision makers consider information they have acquired outside the hearing room. See Board of Aldermen of Town of Bay Springs v. Jenkins, supra, 423 So.2d at 1327-1328. Rezoning hearings as they have been conducted in this state closely resemble hearings normally conducted in fact by bodies we label legislative.
The decisions of municipal zoning authorities, because they are legislative decisions, are presumed valid. Currie v. Ryan, 243 So.2d 48, 51 (Miss. 1970). A comprehensive zoning ordinance such as that adopted by the City of Jackson in 1974 is presumed to be "well planned and adopted to be permanent".[5]Wright v. Mayor and Commissioners of City of Jackson, 421 So.2d 1219, 1222 (Miss. 1982); Cloverleaf Mall Ltd. v. Conerly, 387 So.2d 736, 740 (Miss. 1980); Martinson v. City of Jackson, 215 So.2d 414, 417 (Miss. 1968). Because communities grow and changes occur, municipal officials possess the power to rezone.
The presumption of reasonableness and validity applies to rezoning as well as to original zoning. The rezoning ordinance, too, is the act of a body exercising broad law-making powers. Accordingly, the rezoning ordinance adopted by the City of Jackson on March 11, 1982, comes before us bearing the same presumption of validity as is applied to the comprehensive zoning ordinance of 1974. See Martinson v. City of Jackson, 215 So.2d 414, 417 (Miss. 1968); Bell v. City of Canton, 412 So.2d 1179, 1180 (Miss. 1982); Sullivan v. City of Bay St. Louis, 375 So.2d 1200, 1201 (Miss. 1979).
Further undergirding the proposition that zoning is essentially a legislative function are the well-established limitations on the powers of the judiciary to interfere.[6] *1181 Under the established positive law, neither the circuit court nor this Court has power to tamper with a municipal zoning ordinance unless the rezoning be demonstrably "arbitrary, unreasonable or capricious." Board of Aldermen of Town of Bay Springs v. Jenkins, 423 So.2d 1323, 1328 (Miss. 1982); City of New Albany v. Ray, 417 So.2d 550, 552 (Miss. 1982); Bell v. City of Canton, 412 So.2d 1179, 1180 (Miss. 1982); Sullivan v. City of Bay St. Louis, 375 So.2d 1200, 1201 (Miss. 1979); Currie v. Ryan, 243 So.2d 48, 51 (Miss. 1970).
When the validity of a rezoning ordinance is at issue, one test for arbitrariness is to look at the rezoning in the context of the comprehensive plan as the same may have evolved and been amended. Where the reclassification does no substantial violence to the growth scheme of the comprehensive plan and varies in no major respect from zoning classifications in the surrounding area, it will generally not be disturbed on judicial review. "Spot zoning," on the other hand, is generally condemned. Jitney Jungle, Inc. v. City of Brookhaven, 311 So.2d 652, 654 (Miss. 1975); McKibben v. City of Jackson, 193 So.2d 741, 744 (Miss. 1967); Ridgewood Land Company v. Simmons, 243 Miss. 236, 251-252, 137 So.2d 532, 538 (1962).

C.
Though essentially legislative, over time the zoning process has acquired quasi-judicial trappings. No doubt this became inevitable the moment the power of judicial review came into being.
The hallmark of the exercise of judicial power is the enforcement of primary rules.[7] Here, for example, we require adherence to the rule that no change in zoning classification may be made absent either a mistake in the original zoning or a change in circumstances in the neighborhood and a public need for the rezoning. To be sure, these rules are flexible, partaking more of the character of principles than rules. Because we enforce these principles, because we direct that no rezoning shall occur except the requirements of these principles be met, zoning has in fact become quasi-judicial.
We emphasize quasi-judicial, rather than wholly judicial. For the determination of public need certainly remains legislative. It is a determination that takes place in the absence of rules defining what is and what is not a matter of public necessity. Democratically chosen representatives of the people are presumed to "know" public need. By virtue of their selection and ultimate accountability at the ballot box, these municipal decision makers are in tune with accepted notions of public necessity. See Board of Aldermen of Town of Bay Springs v. Jenkins, 423 So.2d 1323, 1327-1328 (Miss. 1982).[8] Still, we ought *1182 with candor acknowledge that we are approaching the process of adjudication[9] when we say that, before municipal authorities have the power to rezone, they must find either
(1) that there was a mistake in the original zoning, or
(2)(a) that the character of the neighborhood has changed substantially so that rezoning is clearly justified, and
(b) that there is a public need for the rezoning of the property.
Bridges v. City of Jackson, 443 So.2d 1187 (Miss. 1983); Board v. Aldermen of Town of Bay Springs v. Jenkins, 423 So.2d 1323, 1328 (Miss. 1982); Wright v. Mayor and Commissioners of City of Jackson, 421 So.2d 1219, 1222 (Miss. 1982); City of New Albany v. Ray, 417 So.2d 550, 552 (Miss. 1982); Cloverleaf Mall Ltd. v. Conerly, 387 So.2d 736, 740 (Miss. 1980).
We use the language and tools of adjudication when we impose burdens of proof to be met in zoning hearings. Our cases state that the rezoning applicant has the burden of establishing that there has been a change or mistake. Wright v. Mayor and Commissioners of City of Jackson, 421 So.2d 1219, 1222 (Miss. 1982); City of Oxford v. Inman, 405 So.2d 111, 113 (Miss. 1981); City of New Albany v. Ray, 417 So.2d 550, 552 (Miss. 1982); Ballard v. Smith, 234 Miss. 531, 107 So.2d 580, 586 (1958).
This burden of proof does not operate as in a trial. Because at its core the rezoning process remains legislative in nature, our enforcement of a burden of proof is strained at best. We are not here concerned with the situation where the party bearing the burden in reality bears the risk of losing his case should he fail to introduce at the hearing evidence of the existence of certain facts. The rezoning tribunal has a responsibility first to act in the public interest. It may draw upon its knowledge of the community and the area as well as the applicant's proof.[10]
Beyond that, in substantial change of neighborhood rezoning cases, the facts generally ought be undisputed. The present zoning of all areas surrounding the seven-acre tract in question is a matter ascertainable with legal and factual certainty. The present use of each area is likewise susceptible of factual and legal determination with certainty. The dates of any changes are similarly ascertainable with certainty. There is no reason why there should ever be an evidentiary fact issue in dispute at the conclusion of a rezoning hearing.[11]
We are here concerned with whether the changes which have occurred may be fairly characterized as substantial. The question the municipal zoning authorities ought ask is, "Do these changes clearly justify rezoning?" This question requires a subjective judgment based upon uncontroverted facts. The controversy regards the conclusion fairly drawn from the facts, and the value judgment thereafter to be made, not a dispute of fact itself. We find this truth implicit in the "fairly disputable" test articulated by the Supreme Court in Euclid and routinely repeated by this Court. See, e.g., Currie v. Ryan, 243 So.2d 48, 52 (Miss. 1970).

IV.
The Jackson City Council in the exercise of its legislative powers (entailed by some quasi-judicial trappings) has adopted *1183 an ordinance providing that subject property be reclassified from R-1A, R-5 and C-3 to C-3 in its entirety. This ordinance has been predicated upon a finding of "change",[12] not mistake. Woodland Hills on this appeal challenges this "change" finding.
We have set forth a comprehensive survey of the facts in Section II(A) above. In brief, since 1974 there have in the area of subject property been eight changes in zoning classification from residential to commercial. Today approximately 27.8 percent of the outer perimeter of the seven acre tract in question borders property already zoned C-3.[13] Another 32.9 percent fronts on Lakeland Drive (across the street from St. Dominic's Hospital) or West Frontage Road. Another 10.1 percent adjoins property now zoned C-1.
With respect the 17.7 percent of subject property's outer perimeter that borders property now zoned R-5 (Parkview Apartments), it is important to note that just west of that area is a much larger area also fronting on Lakeland predominantly zoned C-2.
When all is said and done, only 10.1 percent of the perimeter borders the R-1A Woodland Hills subdivision. As the map attached as an Appendix to this opinion makes clear, this bordering is "back-to-back".
In this context, Woodland Hills candidly acknowledges that the zoning of subject property ought to be changed. "Appellant has never denied that the character has changed, nor has it argued that a rezoning of the seven (7) acre tract is inappropriate." Brief of Appellant, pages 7-8. Subsequently, Appellant repeats the point, reminding us that it has "never argued that the property should remain R-1A and R-5, but rather that it should not be rezoned to C-3... ." Brief of Appellant, page 29. Woodland Hills in effect argues that the property should have been rezoned C-1, not C-3. Without doubt had the Jackson City Council adopted a C-1 classification for this property, such would have been beyond our power to disturb.
Having well in mind the principles discussed in Section III above, and particularly the limited scope of judicial review of rezoning ordinances, we must reject this assignment of error. We have in essence an argument that we hold that this property should have been rezoned C-1 instead of C-3. Once a "change" finding has been made, and, indeed, once protestant concedes a "change" has occurred and that some reclassification is in order, and where the case boils down to a squabble whether the new classification should be C-1 or C-3, it is difficult to envision a case where we would intervene. Certainly, this is not such a case.
We emphasize that this case is wholly distinguishable on its facts from Wright v. Mayor and Commissioners of City of Jackson, 421 So.2d 1219 (Miss. 1982). In Wright there was a gross lack of evidence to support the rezoning ordinance adopted by the municipal authorities. More specifically, in Wright there was an absence of evidence that a "change" had occurred, a fact conceded here. In Wright the rezoning was arbitrary, capricious and unreasonable. Indeed, the point was not "fairly debatable".
Similarly, this case is distinguishable from Bridges v. City of Jackson, 443 So.2d 1187 (Miss. 1983), also decided this day. In Bridges, the Jackson City Council's refusal to rezone was arbitrary, capricious and unreasonable. There was overwhelming evidence that a "change" had occurred. No *1184 evidence supported the refusal to rezone. Again, the point was not "fairly debatable".

V.
Appellant Woodland Hills charges that City Zoning Administrator William D. Hardin and Senior City Planning Janet D. Crawford presented erroneous factual information at the public hearings held on the instant rezoning request. Accordingly, Woodland Hills argues that the Zoning Committee of the Jackson City Planning Board did not have correct information upon which to act.
The controversy seems to surround whether in fact there is a small "buffer zone" along the northwest side of the subject property. Appellant feels that the city planning staff erred in its description of a possible buffer zone which appellant contends is actually the backyard of an adjoining Woodland Hills landowner.
The point is without merit for several reasons. The error, if any, was made in testimony presented to the Zoning Committee and the Planning Board function as advisory bodies only. Their decisions were neither final and controlling in fact nor in law. Our focus is upon the actions of the Jackson City Council which as a matter of law possesses the sole power to rezone. Wright v. Mayor and Commissioners of the City of Jackson, 421 So.2d 1219, 1222 (Miss. 1982). The Jackson City Council held a full and open hearing on the rezoning request. Appellant had full and ample opportunity to explain its understanding as to this so-called error of fact and indeed took full advantage of same. In this view, Appellant's point has no force.
Second, Appellant's argument is premised on the assumption that the law requires creation of a buffer zone between the proposed new development and the residential property owners situated to the northwest. There is no such requirement in our law. Acting in its legislative capacity, the City of Jackson certainly had the power to require that Bailey establish such a buffer zone as a condition of the rezoning.[14] The city council chose to impose no conditions, however. Such was within its discretion in the exercise of its legislative authority.
We note that Bailey has entered into protective covenants with some members of the Woodland Hills residential neighborhood to the northwest. The effect of these covenants is that there will be a 25-foot buffer strip let between the development and any adjoining residential property. The City Council as indicated could have insisted upon such a covenant and thereby acquired the right to enforce it. It chose, however, a different route, merely recognizing that the existing covenants between Bailey and several of these landowners. While arguably not as tightly binding on Bailey as conditional zoning would have been, the City Council nevertheless found that these covenants provide protection not only to those property owners who signed it but also to the disgruntled Appellant and its members.
Third, the mere presentation of erroneous information by a witness hardly infects the rezoning ordinance. If in a criminal trial a law enforcement officer gives a bit of testimony demonstrated on cross-examination to be false, but if the defendant is nevertheless convicted, the error of fact stated by the law enforcement officer will hardly be grounds for reversal. Unless the error of fact is central to the case or goes to the very heart of the issue before the hearing tribunal, we have no power to interfere. Suffice it to say that here the alleged error of fact, assuming that it did occur, comes nowhere near to casting doubt upon the validity of the rezoning ordinance.

VI.
Appellant further argues that the City failed to give proper consideration to *1185 additional traffic expected to be generated by the Bailey development on the rezoned property. To be sure, traffic problems are a matter rezoning authorities are required to consider to outweigh and balance with and against all other relevant factors or interests. See Wright v. Mayor and Commissioners of City of Jackson, 421 So.2d 1219, 1223 (Miss. 1982).
Acting in its legislative capacity, the Jackson City Council had this to say on the matter of traffic:
The Jackson City Council recognizes that the proposed development will increase traffic on Lakeland Drive and on the west frontage road. However, there is a public need for the proposed development, and the economic or other benefits that will accrue to the City of Jackson from the rezoning of the subject property substantially outweigh the problems which may result from an increase in traffic.
Suffice it to say that the traffic issue is one which, on the record presented to us, is fairly debatable. The proceedings before the City Council make it clear that traffic was seriously considered, weighed and balanced along with all other relevant factors. The Council then exercised its legislative discretionary powers and ordered the rezoning. We cannot say that their action was arbitrary, unreasonable and capricious.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
*1186 
NOTES
[1] For general discussions of the comprehensive plan requirement, see Khayat, et al., Zoning Law in Mississippi, 45 Miss.L.J. 365, 365, 368-369 (1974), and Haar, In Accordance With A Comprehensive Plan, 68 Harv.L.Rev. 1154 (1955).
[2] See Andrews v. Lake Serene Property Owners Association, Inc., 434 So.2d 1328 (Miss. 1983) where we recognized zoning ordinances as an exception to the cherished notion that ordinarily, that miniscule portion of this planet's soil as a person owns may be put to such use as that person desires. 434 So.2d at 1331.
[3] The proposition that zoning is an appropriate governmental function given our ever changing socio-economic order was acknowledged in this state in Justice Griffith's poignant prose in City of Jackson v. McPherson, 162 Miss. 164, 176, 138 So. 604, 605 (1932).
[4] For an excellent discussion of the legitimate objectives of zoning, see Developments In the Law  Zoning, 91 Harv.L.Rev. 1427, 1429-1462 (1978).
[5] As explained above, "permanent" as used in this context does not contemplate a stagnant never changing community. The growth structure contained in the comprehensive plan is what is intended to be permanent. By analogy, the enactments of the legislature of the State of Mississippi are said intended as permanent, but this in no way affects the legislature's power through orderly procedures to effect changes in general or in the particular.
[6] Some argue that zoning is a legislative function but that rezoning partakes of an administrative one. The point is of moment in that the scope of judicial review of the exercise of legislative functions is generally thought even more limited than of administrative decisions. See Developments in the Law  Zoning, 91 Harv.L. Rev. 1427, 1546-1547 (1978). Compare Board of Trustees of Pass Christian Municipal Separate School District v. Acker, 326 So.2d 799, 801 (Miss. 1976). Lest we allow the tail to wag the dog, the scope of review of a rezoning ordinance must first be articulated in all of its legal particulars. Then and only then ought we apply a label of convenience  legislative, administrative, or perhaps judicial  to the rezoning function.
[7] The term "primary rules" is used in the sense contemplated in H.L.A. Hart's The Concept of Law (1961) 77-96.
[8] In the Bay Springs case Justice Hawkins well described this dynamic.

In rendering the municipal order, the Mayor and Board of Aldermen were authorized to consider the statements expressed by all the landowners at the hearing, as well as to call upon their own common knowledge and experience in their town. It is manifest that the Mayor and Board took into consideration all statements, both sworn and unsworn, and their common knowledge and familiarity about their small community, in reaching their decision. We believe this method to be sound and practical, and courts should respect such findings unless they are arbitrary, capricious, and unreasonable. 423 So.2d at 1327-1328.
Jackson, of course, is much larger than Bay Springs. Jackson's City Councilmen, sitting as zoning authorities may, nevertheless, with equal right draw upon their common knowledge, experience and familiarity with their city and its needs.
We emphasize that whenever zoning authorities act on the basis of their general knowledge of their community or on the basis of any other information obtained other than "from the parties," they should clearly so state. In order that we might effectively perform our judicial review responsibilities, it is vital that we be realiably informed of all bases of the decision of the zoning authorities.
[9] See generally, Fuller, The Forms and Limits of Adjudication, 92 Harv.L.Rev. 353, 365-371 (1978).
[10] See Footnote 8, supra.
[11] In most cases either the applicant or protestant will provide this factual information. As suggested above, however, zoning authorities are in no way limited to evidence offered by the parties. They have the power and prerogative to order their staff to verify all information presented by the parties and to fill any gaps. They ought not act without these clearly establishable facts having been clearly established.
[12] We use the word "change" as shorthand for rule that the zoning classification of property may be changed when it has been demonstrated

(a) that the character of the neighborhood has changed substantially so that rezoning is clearly justified, and
(b) that there is a public need for the reclassification of the property.
A thorough discussion of the components and intricacies of this test for rezoning is found in Gladden, The Change or Mistake Rule: A Question of Flexibility, 50 Miss.L.J. 375 (1979).
[13] By no means insignificant is the fact that a small portion of subject property in the southeast corner is already C-3.
[14] Conditional zoning is authorized in Mississippi. Yates v. Mayor and Commissioners of City of Jackson, 244 So.2d 724, 726 (Miss. 1971). See also, Church v. Town of Islip, 8 N.Y.2d 254, 203 N.Y.S.2d 866, 168 N.E.2d 680 (1960), affirming 8 A.D.2d 962, 190 N.Y.S.2d 927 (2d Dept. 1959).