# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00111-COA

| | |
|---|---|
| JACKSON COUNTY, MISSISSIPPI, BY AND THROUGH JACKSON COUNTY BOARD OF SUPERVISORS | APPELLANT |

v.

| | |
|---|---|
| MICHAEL MARCELLUS | APPELLEE |

| | |
|---|---|
| DATE OF JUDGMENT: | 12/30/2022 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES H. COLMER JR. |
| ATTORNEYS FOR APPELLEE: | MICHAEL E. WHITEHEAD |
| | JOHANNA MALBROUGH McMULLAN |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 03/19/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND EMFINGER, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.    The Jackson County Board of Supervisors (Board) appeals from the circuit court's order reversing the Board's decision denying Michael Marcellus a request for reclassification of his residential property to commercial. The only issue on appeal is whether the Board acted arbitrarily and capriciously. The circuit court found that Marcellus sufficiently proved that rezoning his property was warranted because he evidenced a change in the character of the neighborhood and a public need. After a review of the record, we hold that the circuit court was in error. We reverse and render the circuit court's decision and reinstate the Board's decision denying Marcellus' application.

## FACTS AND PROCEDURAL HISTORY

¶2.     Michael Marcellus owns a piece of land identified as Lot 7, Block 2, of the Parkwood Estates Subdivision in St. Martin, Mississippi.  Located at the corner of Lemoyne Boulevard and April Bayou Drive, the lot's address is 6725 April Bayou Drive, and the property is zoned as "single-family residential" (R-1A).  On the zoning map, April Bayou runs perpendicular to Lemoyne Boulevard.

¶3.     In September 2021, Marcellus filed an application for a zoning change with the Jackson County Planning Department (JCPD) because Marcellus wanted the property reclassified to commercial (C-2).  After filing the rezoning application, Marcellus signed a document acknowledging that he had the burden to establish by clear and convincing evidence that the character of the neighborhood had changed to justify rezoning and that a public need existed for the rezoning.  On September 15, 2021, JCPD held a meeting to discuss Marcellus' application.  After review, JCPD voted 5-1 and recommended that the Board approve the application.

¶4.     A few residents within the area appealed the JCPD's decision to the Board.  One particular resident wrote that a zoning change would "drive down the value" of lots with homes being built on them.  The resident further stated that the lot itself did not meet the requisite code regulations for commercial use.  Another resident appealed because the lot was the entrance and exit of the adjacent Parkwood Estates Apartment Complex.

¶5.     A hearing on the matter was held on November 15, 2021, before the Board, which was comprised of a five-member panel.  Two of the adjoining property owners who appealed

JCPD's decision, Daniel Demarcus and Robert Eckles, testified first.

¶6.     Daniel's wife Carolyn Demarcus told the Board that the Planning Commission was wrong for granting Marcellus' rezoning application because the property "cannot support a commercial building without breaking several ordinances" because of "all the easements and right-of-ways." Daniel followed with further explanation. He said that the zoning ordinance for commercial properties requires a distance of forty feet between the street and the property when it is a corner lot. But because the subject property was small in size, it was impossible for the property to meet this requirement. Afterward, Carolyn mentioned that contrary to Marcellus' position that only commercial properties surrounded his vacant lot, multiple homes had been rebuilt in the area, and currently, homes were under construction.

¶7.     Robert Eckles testified next, stating that when residents purchased property in that neighborhood, they signed a covenant classifying the neighborhood as single-family residential (R-1A). After Hurricane Katrina, however, the property owners commercialized the property without anyone's knowledge, according to Eckles. He further stated that when other property owners attempted to commercialize their properties, "the county put a stop to it." Eckles carried on about how none of the twelve residents in the neighborhood wanted the property to be commercialized. He explained that commercializing the property would lead to heavier traffic on his street and drivers speeding through the neighborhood. He was also concerned that commercializing the property would ward off others from building homes in the area.

¶8.     Tasheena Powers, a resident living on Peachtree Drive, told the Board that she was

3

worried about her son's safety. Because the subject property is the only entrance and exit to the neighborhood, and her son had to ride on the bus to get to school, she did not want a liquor store or a dollar store next to the bus stop. Powers testified that placing a business on this lot would cause an increase in traffic.

¶9.     Lionel McCoy, who lived on April Bayou Drive, affirmed the sentiments of all who testified before him, but McCoy further discussed the protective covenant he signed that allegedly prevented him or anyone else from commercializing the properties. He made clear that the property is not a "Lemoyne Boulevard property" but an "April Bayou Drive property" because it faced April Bayou Drive and was addressed as April Bayou Drive.

¶10.    Donovan Scruggs, a town planning consultant who had written a letter in support of JCPD's decision to the Board, testified in Marcellus' behalf. In the letter, Scruggs wrote that a public need to rezone the property existed because rezoning was necessary for the neighborhood's development, would provide tax dollars to the County, and would create jobs. He reiterated these statements at the hearing.

¶11.    Scruggs also testified about the change in the character of the neighborhood. He began his testimony by identifying the property as one located on Lemoyne Boulevard. He then cited the development of the apartment complex and the Joe Benson Collision Center as evidence that the neighborhood had changed from residential to commercial. Scruggs said all other properties on Lemoyne Boulevard were vacant except for one residential property. Thus, in Scruggs' opinion there was no argument that the character of the neighborhood had not changed—at least along Lemoyne Boulevard.

¶12. With regard to whether Marcellus' property would align with the commercial zoning ordinances if the property were rezoned, Scruggs said they would figure that out later. He stated that neither a liquor store nor a convenience store would be built on the property because of its size. Instead, the property built on the land would "be a small office" or "something that works with the neighborhood."

¶13. A member of the Board commented that because the lot was at the corner of April Bayou Drive and Lemoyne Boulevard, it was necessary to look at the areas as a whole. The Board member then moved to overturn the JCPD's decision. The Board unanimously voted in favor of overturning the decision without further comment.

¶14. Marcellus appealed the Board's decision to the Jackson County Circuit Court, arguing that the decision was arbitrary and capricious. The Board responded, stating that its decision was not arbitrary and capricious because it properly weighed the testimony before making its decision.

¶15. On July 15, 2022, a hearing was held before the circuit judge. After the hearing, the circuit judge entered an order to reverse the Board's decision. The circuit judge found that the neighbors' objections were insufficient to deny Marcellus' application because he had shown that the rezoning request was warranted. The Board appeals.

## STANDARD OF REVIEW

¶16. We will reverse the Board's decision only if the record supports that the decision was arbitrary and capricious, illegal, discriminatory, or not supported by substantial evidence. *DeSoto County v. Vinson*, 352 So. 3d 1139, 1142 (¶10) (Miss. Ct. App. 2022). "It is not the

5

role of the judiciary to reweigh the evidence, but rather to verify if substantial evidence exists." *Id*. (quoting *Childs v. Hancock Cnty. Bd. of Sup'rs*, 1 So. 3d 855, 861 (¶19) (Miss. 2009)). Thus, when the Board's decision is "fairly debatable," it will not be disturbed on appeal. *Id*.

## DISCUSSION

### Whether the Board's decision to deny Marcellus' rezoning application was arbitrary and capricious.

¶17. On appeal, we must now determine whether the Board's decision was arbitrary and capricious such that the circuit court erred by reversing the Board's denial of Marcellus' rezoning application.

¶18. When a resident is seeking a zoning reclassification, the application must show by clear and convincing evidence that there was either "a mistake in the original zoning" or that "the character of the neighborhood has changed to such an extent as to justify rezoning." *Beard v. City of Ridgeland*, 245 So. 3d 380, 388 (¶25) (Miss. 2018). In addition, the applicant must show that a "public need exists for rezoning." *Id*. But the evidentiary burden of proof does not function in the same manner as it would in a trial. *Woodland Hills Conservation Ass'n Inc. v. City of Jackson*, 443 So. 2d 1173, 1181 (Miss. 1983). "The rezoning tribunal has a responsibility first to act in the public interest. It may draw upon its knowledge of the community and the area as well as the applicant's proof." *Id*.

¶19. In this instance, Marcellus did not and does not claim that there was a mistake in the original zoning. Therefore, Marcellus must have proved by clear and convincing evidence that there was a change in the character of the neighborhood *and* that there was a public need.

6

*Beard*, 245 So. 3d at 388 (¶25). Here, the Board did not state whether Marcellus met his burden of proof. Indeed, the Board did not provide any explanation when it unanimously decided to deny Marcellus' rezoning application. *Herder v. Madison Cnty. Bd. of Sup'rs*, 271 So. 3d 666, 670 (¶16) (Miss. Ct. App. 2018) (citing *Paine v. Underwood*, 203 So. 2d 593, 597 (Miss. 1967)). Since the Board could have found that Marcellus had not proved by clear and convincing evidence either (1) that there was a change in the character of the neighborhood *or* (2) that a public need existed, we must determine whether the Board's decision was arbitrary and capricious under either reasoning.

¶20. We have said "that 'it is impossible to articulate or design a particular test for determining what is sufficient evidence to show a material change and a public need to support rezoning.'" *White v. City of Starkville*, 283 So. 3d 189, 192 (¶6) (Miss. Ct. App. 2019) (quoting *Speyerer v. Bd. of Sup'rs of Madison Cnty.*, 139 So. 3d 771, 774 (¶14) (Miss. Ct. App. 2014) (quoting *Madison Citizens Against Rezoning v. Madison Cnty. Bd. of Sup'rs*, 101 So. 3d 711, 714-15 (¶13) (Miss. Ct. App. 2012))). On the other hand, we have also held:

> [T]o support on appeal a zone reclassification, the record should, at a minimum, contain the following: a map showing the circumstances of the area, the changes in the neighborhood, statistics showing a public need, and such further matters of proof so that a rational, informed judgment may be formed as to what the governing board considered. Where there is no such proof in the record, we must conclude there was neither change nor public need. *Wrigley* [*v. Harris*], 161 So. 3d [1114,] 1117 (¶9) [(Miss Ct. App. 2015)] (quoting *Town of Florence v. Sea Lands Ltd.*, 759 So. 2d 1221, 1227 (¶22) (Miss. 2000)).

*White*, 283 So. 3d at 192 (¶7).

¶21. To that end, "[t]he Mississippi Supreme Court has not hesitated to reverse [a] board

7

of supervisors' decision" to rezone when the change in the character of the neighborhood was not substantial. *Cockrell v. Panola Cnty. Bd. of Sup'rs*, 950 So. 2d 1086, 1092 (¶14) (Miss. Ct. App. 2007) (citing *Wright v. Mayor & Comm'rs of Jackson*, 421 So. 2d 1219, 1223 (Miss. 1982); *City of Oxford v. Inman*, 405 So. 2d 111, 112 (Miss. 1981); *Hughes v. Mayor & Comm'rs of Jackson*, 296 So. 2d 689, 691 (Miss. 1974)). In *Wright*, the supreme court focused on the meaning of "neighborhood" and found that the applicant had failed to prove there had been any substantial change in the area within close proximity to the subject property. *Wright*, 421 So. 2d at 1223. The applicant had presented evidence of a change occurring to a highway that was two miles away from the neighborhood. *Id*. Such evidence, the supreme court explained, "ha[d] no relevance with regard to the neighborhood in question." *Id*. In *City of Oxford*, the supreme court held that the applicant did not meet the burden of proving a change in the character of the neighborhood because the applicant presented evidence of a change that was "in accordance with the original zoning plan." *City of Oxford*, 405 So. 2d at 114.

¶22. The evidence used in this case to prove a substantial change in the neighborhood consisted of Donovan Scruggs' testimony in behalf of Marcellus and the images he introduced. Scruggs stated that Lemoyne Boulevard had a "traffic count about 15,000 cars per day at this location." Scruggs then showed the Board an image that identified the location of the property. The next image, he said, depicted the construction in the area that had occurred after Hurricane Katrina in 2005. He said it showed the construction of "Joe Benson's Collision Center" and "big apartment complexes." The third image depicted vacant

8

lots on Lemoyne Boulevard. After presenting the images, Scruggs further claimed that "Lemoyne Boulevard [was] not what it was in 1990, it's not what it was in 2000," and "it continues to evolve." He concluded his argument by stating that "nobody really argued that the character along Lemoyne Boulevard had changed."

¶23. As for evidence to support a public need for rezoning, Marcellus argued that there was a public need because he could not sell the property as residential. He further argued that reclassification was necessary because he could not develop the property, but he was required to continue to pay taxes and cut the grass.

¶24. Reviewing the evidence, we find that the Board's decision was not arbitrary and capricious. As exemplified by our caselaw, the applicant must do more than assert that there is a public need to meet the clear and convincing standard. In one case, an applicant "provided the Board with data and statistics on the county's unemployment rate, median household income, and the number of residents living below the poverty level." *White v. City of Starkville*, 283 So. 3d 189, 193 (¶10) (Miss. Ct. App. 2019). The applicant further provided a consultant's report, explaining how the development plan made "the area more competitive in economic development and more attractive to employers." *Id*. We held that the Board had substantial credible evidence before it to find in favor of rezoning. *Id*. at (¶11).

¶25. In another case, an applicant argued that he had demonstrated a public need "through five pieces of evidence: (1) higher tax revenue, (2) commercial expansion, (3) consistency with the comprehensive plan, (4) changes in traffic patterns, and (5) record statements of a Board member agreeing with his position regarding such changes." *Little v. Mayor*, 194 So.

3d 209, 211 (¶7) (Miss. Ct. App. 2016). On the other hand, the residents opposing reclassification had testified that their neighborhood was "a beautiful place to live" and that a rezoning would harm their emotional and financial investments. *Id*. at (¶12).

¶26. Upon review, this Court noted that "substantial weight may be given to the concerns of the citizenry in determining whether a public need exists for rezoning," *id*. at (¶13), and therefore found the issue was fairly debatable. Because reasonable minds could differ as to whether a public need existed, we affirmed the Board's decision. *Id*. We further noted that both a favorable and unfavorable decision was within the Board's discretion. *Id*.

¶27. Likewise, here, the "public need" element was fairly debatable in this case. It was permissible for the Board to consider the testimony of the neighbors objecting to the rezoning. The neighbors were concerned about the safety of their children and the potential increase in traffic. The neighbors also testified against there being a public need for rezoning by stating that reclassifying the property as commercial would bring down the value of the neighborhood. The neighbors further stated that the lot should remain residential because houses were being built on the vacant lots in the neighborhood and because the lot was the only entryway and exit for the apartment complex. In addition, the individual members of the Board noted on the record that they were having to make a "tough decision."

¶28. Given that Marcellus' evidence did not demonstrate a public need to the Board and that the Board could give substantial weight to the neighbors' testimony, we cannot find that the Board's decision was arbitrary and capricious. Thus, we reverse the circuit court's order and render judgment reinstating the Board's decision denying Marcellus' application.

**¶29.  REVERSED AND RENDERED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.  LAWRENCE, J., NOT PARTICIPATING.**