HAWKINS, Justice,
for the Court:
This is an appeal by the City of Jackson and property owners from a judgment of the Circuit Court reversing a denial by the City Council of Jackson of an application to rezone a small tract.
The only issue on this appeal is whether the City Council exceeded its authority in denying the application to rezone a 1.5-acre tract from single-family residential to a townhouse residential zone. Persuaded the City Council in reaching its decision had ample factual basis and followed the applicable zoning law, we are compelled to reverse the judgment of the Circuit Court and reinstate the order of the City Council.
FACTS
Pear Orchard Road runs into Old Canton Road. At this intersection Old Canton Road runs in a northeasterly direction and Pear Orchard Road runs in a northwesterly direction. At the southwest corner of this intersection where the streets make a slightly greater than ninety degree angle, there is a five-acre tract of land purchased several years ago by Wheatley Place, Inc., a corporate realty developer.
*82 Old Canton Road has a seventy-foot right-of-way of which twenty-four feet is hard surfaced; Pear Orchard Road has a fifty-foot right-of-way of which twenty-eight feet is hard surfaced.
The five-acre. tract is zoned R-l Residential which limits construction to single-family residences, on lots of a minimum size of 7,500 square feet.
Directly across Pear Orchard Road on the northeast is a three- or four-acre tract zoned commercial. Also, due east of the intersection the area is zoned commercial. All of the remainder of the surrounding area is zoned R-l Residential.
Wheatley sold the west 3.5 acres of its five-acre tract to a church, which planned to construct a church building in compliance with the zoning ordinance.
The remaining 1.5 acres is of a rectangular shape, with approximately four hundred feet fronting on Old Canton Road and approximately 160 fronting on Pear Orchard Road. This is the area in controversy.
On June 15, 1981, Wheatley petitioned the City to rezone this 1.5 acre from R-l Residential to R-3 Residential.
R-3 Residential does not require any space between the structures and lot boundary, and permits the construction of townhouses on a minimum lot size of 2,400 square feet. The tract could accomodate six residences under R-l classification, but under R-3 fourteen townhouses could be built.
Prior to this application there had been no change in zoning in this particular area.
It was the contention of Wheatley in its application, supporting documents and at the hearing that the amended zoning would clearly permit the highest and best use of this tract, further, that this would form a buffer or transitional area from the commercially zoned area to the R-l single-family area which surrounded at least three-fourths of the tract’s perimeter. It was a further contention of Wheatley that this rezoning would not decrease the value of surrounding residential property, or be an inimical to the surrounding homeowners enjoyment of their property.
Wheatley planned an entrance off Old Canton Road, one connecting drive, with parking in the rear of the townhouse complex.
There was a vigorous protest to this application. Over one hundred surrounding homeowners signed petitions opposing the amendment to the zoning ordinance. The contention of the opponents was that rezoning would be inimical to their enjoyment of their property, that single-family homeowners on lots with yards traditionally and historically took better care of their property than townhouse owners. Also, they contended the already heavy traffic on Old Canton Road would be further and unnecessarily increased. Further, the protestors asserted there was no public need for this change, that there were ample areas in the vicinity that had been rezoned, and which had yet to be fully developed.
The Zoning Committee found the zoning would provide a transition or buffer from the commercial area to the north and east to the R-l Residential on the southwest of this tract, that the rezoning met the intent of the zoning ordinance by providing such transition, and that such rezoning would have no adverse impact on the adjacent low density residential environment. The Planning Board likewise recommended rezoning of the property to the City Council.
The Mayor and City Council, however, denied the application and Wheatley appealed to the Circuit Court via a Bill of Exceptions, under Miss.Code Ann. § 11-51-75.
The circuit judge ruled the action of the City Council in denying the application was arbitrary and unreasonable, and reversed the City’s decision.
The City and surrounding residential property owners have appealed.
LAW
In our appellate review of the reasonableness and propriety of zoning ordinances, we have developed some basic *83 rules over the past quarter century. We began by stating in Ballard v. Smith, 107 So.2d 580, 234 Miss. 531 (1959), that courts should not constitute themselves zoning boards. We have amplified this statement with the observation that the classification of property for zoning purposes is essentially a legislative rather than a judicial responsibility of the city board, and in the absence of its being arbitrary, unreasonable, discriminatory, confiscatory, or an abuse of discretion courts would not interfere; and courts would set aside only if the invalidity was clear. See: Adams v. Reed, 123 So.2d 606, 239 Miss. 437 (1960); Robinson Industries v. City of Pearl, 335 So.2d 892 (Miss.1976); City of Jackson v. Ridgway, 261 So.2d 458 (Miss.1972); Jackson v. Schwartz, 244 So.2d 8 (Miss.1970); Currie v. Ryan, 243 So.2d 48 (Miss.1970); Moore v. Madison County Board of Supervisors, 227 So.2d 862 (Miss.1969); Howie v. Autrey, 209 So.2d 904 (Miss.1968).
It should also be borne in mind, however, that while a duly enacted comprehensive zoning ordinance is not a true protective covenants agreement, it bears some analogy-
Purchasers of small tracts of land invest a substantial portion of their entire lifetime earnings, relying upon a zoning ordinance. Without the assurance of the zoning ordinance, such investments would not be made. On this small area they build their homes, where they expect to spend the most peaceful, restful and enjoyable hours of the day.
Zoning ordinances curb the exodus of city workers to a lot in the distant countryside. Indeed, the protection of zoning ordinances in municipalities, as opposed to no zoning in most county areas, encourage the choice of a city lot rather than a country lot for a home in the first instance. Zoning ordinances make city property more attractive to the prudent investor.
In the absence of agreement between all interested parties, an amendment to a zoning ordinance is not meant to be easy. Otherwise, it would be a meaningless scrap of paper. As former Justice Robertson noted in City of Jackson v. Wilson, 195 So.2d 470 (Miss.1967), at 473:
Homeowners are the backbone of any community. They take pride in developing and maintaining attractive homes and yards, and anything that discourages this wholesome attitude on their part hurts the community.
Therefore, in making an appellate determination of the validity of amendments to zoning ordinances and especially where individuals seek to reclassify a particular piece of property from one zoning class to another, this Court has over the years additionally enunciated some specific standards, which we follow in either upholding or striking down a city’s decision on a rezoning application. These rules or standards were succinctly summarized and stated by Justice Sugg in Cloverleaf Mall, Ltd. v. Conerly, 387 So.2d 736 (Miss.1980), at 740:
Before reviewing the evidence in this case, we restate the requirements set forth in our cases which must be met by one seeking rezoning of property. The courts presume that comprehensive zoning ordinances adopted by municipal authorities are well planned and designed to be permanent. Before property is reclassified from one zone to another, there must be proof either, (1) that there was mistake in the original zoning or, (2) the character of the neighborhood has changed to such an extent as to justify rezoning and that public need exists for rezoning. Watts v. City of Wiggins, 376 So.2d 1072 (Miss.1979); Sullivan v. City of Bay St. Louis, 375 So.2d 1200 (Miss.1979); Jitney Jungle, Inc. v. City of Brookhaven, 311 So.2d 652 (Miss.1975); Underwood v. City of Jackson, 300 So.2d 442 (Miss.1974); Patterson v. City of Jackson, 285 So.2d 466 (Miss.1973); Board of Supervisors of Jackson County v. Roberts, 287 So.2d 436 (Miss.1973); City of Jackson v. Husbands, 233 So.2d 817 (Miss.1970); Martinson v. City of Jackson, 215 So.2d 414 (Miss.1968); Moore v. Madison County Board of Supervisors, 227 So.2d 862 (Miss.1969); *84 City of Jackson v. Wilson, 195 So.2d 470 (Miss.1966) and City of Jackson v. Bridges, 243 Miss. 646, 139 So.2d 660 (1962).
Furthermore, an applicant seeking rezoning must prove by clear and convincing evidence either (1) or (2) above. Sullivan v. City of Bay St. Louis, 375 So.2d 1200 (Miss.1979); Underwood v. City of Jackson, 300 So.2d 442 (Miss.1974); Hinds County Board of Supervisors v. Covington, 285 So.2d 143 (Miss.1973).
It is also well established that the use of property in accordance with an original zoning plan is not a material change of conditions which authorizes rezoning. Jitney Jungle, Inc. v. City of Brookhaven, 311 So.2d 652 (Miss.1975); Martinson v. City of Jackson, 215 So.2d 414 (Miss.1968).
⅛ ⅞: sjs ¡⅜ sjc *
Not only were petitioners required to prove changed conditions which would authorize rezoning, but they were also required to prove that a public need existed for rezoning.
These standards have been consistently applied in our subsequent decisions of City of Oxford v. Inman, 405 So.2d 111 (Miss.1981); Wright v. City of Jackson, 421 So.2d 1219 (Miss.1982); Board of Aidermen of Bay Springs v. Jenkins, 423 So.2d 1323 (Miss.1982); and Bridges v. City of Jackson, 443 So.2d 1187 (Miss.1983).
In viewing the record in this case, we find Wheatley failed to prove there had been any change in the area warranting rezoning, or a public need therefor, both of which were prerequisites to a valid reclassification. Clearly then, the City was authorized to deny the application.
Even if the factual issue of the requisite change and public need had been “fairly debatable,” an appellate court would have not been authorized to disturb the City’s decision on the application. See: Currie v. Ryan, supra; Paine v. Underwood, 203 So.2d 593 (Miss.1967); Lewis v. City of Jackson, 184 So.2d 384 (Miss.1966); City of Jackson v. Bridges, 243 Miss. 646, 139 So.2d 660 (1962); Sullivan v. City of Bay St. Louis, 375 So.2d 1200 (Miss.1979); Woodland Hills Conservation Association, Inc., v. City of Jackson, 443 So.2d 1173 (Miss.1983). It follows that where there was no proof of either the requisite change or public need before the City Council, this body was authorized to deny the application.
Neither are we persuaded by Wheatley’s argument that its application was approved by the Zoning Committee and the Planning Board. These bodies are advisory; the City’s elected board or council is determinative. See: Wright v. Mayor and Commissioners of City of Jackson, 421 So.2d 1219 (Miss.1982) at 1222, and cases cited.
Nor are we persuaded by Wheatley’s argument that the proposed reclassification would permit the best use of the property. While this is a factor to be considered, it is not determinative of the question. See: Hinds County Board of Supervisors v. Covington, 285 So.2d 143 (Miss.1973), at 145.
REVERSED; DECISION OP CITY COUNCIL DENYING APPLICATION TO REZONE REINSTATED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
DAN M. LEE and ANDERSON, JJ., not participating.