# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-01271-SCT

*MICHAEL EDWARDS AND PIERCE BREWER*
*INDIVIDUALLY AND IN THEIR*
*REPRESENTATIVE CAPACITIES AS*
*ORGANIZERS AND MEMBERS OF*
*CONCERNED CITIZENS OF SAUCIER*

*v.*

*HARRISON COUNTY BOARD OF SUPERVISORS*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/30/2008 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHESTER D. NICHOLSON |
| ATTORNEYS FOR APPELLEE: | JOSEPH R. MEADOWS |
| | KAREN J. YOUNG |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 08/27/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1. The Harrison County Board of Supervisors (the Board) rezoned 627 acres of land located in Harrison County from A-1, agricultural, and E-1, very low density residential, to I-2, general industry. Michael Edwards, Pierce Brewer, individually and in their representative capacities as organizers and members of Concerned Citizens of Saucier (Edwards) appealed from the Board's decision to the Circuit Court of Harrison County, First

Judicial District. The circuit court affirmed the Board's rezoning. From this ruling, Edwards appealed to this Court asserting the following errors:

I. The concerned citizens of Saucier were denied their right to due process under the Fourteenth Amendment of the United States Constitution and Article 3, Section 14 of the Mississippi State Constitution, when the decision-maker on the zoning issue was a Party to the contract and had a preexisting contractual duty to change the zoning.

II. Mississippi law requires either an error in the initial zoning; a change in the character of the use of the land; or some compelling need before existing zoning may be changed. None of these circumstances apply; thus, the board of supervisors did not have a fairly debatable reason in changing the zoning as it did, making the decision arbitrary and capricious.

III. The fore contract could not legally go forward, since by its own terms the agreement forbade the county from closing on the contract if there existed any pending or threatened litigation affecting the property.

IV. Since the contract between the county and fore required that at least 73 percent of the fore property be available for development, a precondition for the rezoning, the decision to rezone for the purpose of buying the 627 acres was arbitrary and capricious in that the board knew or should have known that wetlands and the mdot requirements for the 601 connector would take up to half the purchased land, thus thwarting the putative purpose of the rezoning.

V. The board denied the objectors a fair hearing when it refused to admit and consider clearly relevant information and documents which addressed concerns raised initially at the planning commission meeting, and the circuit court should have taken judicial notice of the exhibits offered by the objectors at the hearing before the board of supervisors.

¶2. Although the plaintiffs raise several errors on appeal, we find the following issues dispositive: Whether the Board's decision to rezone was arbitrary, capricious, and/or unsupported by the evidence; and whether the zoning authorities, as a party to the purchase

2

agreement, violated the Citizens' right to due process of law. Finding no error, we affirm the decision of the Circuit Court of Harrison County, First Judicial District.

## FACTS AND PROCEDURAL HISTORY

¶3.    In 2006, the Harrison County Development Commission (HCDC) began negotiating with Cotton Fore for the purchase of approximately 627 acres for use as an industrial park. The land, located in Saucier, Mississippi, was zoned A-1/E-1, agricultural and light residential. The HCDC entered into a Real Estate Purchase Agreement with Fore. The option to purchase the land for an industrial park was subject to rezoning approval.

¶4.    Fore and the HCDC submitted a joint petition to rezone to the Harrison County Planning and Zoning Commission (Planning Commission), requesting the land be rezoned as I-2, general industrial. A public hearing was held before the Planning Commission on September 21, 2006. Larry Barnett, executive director of the HCDC, and Bill Hessle[1], director of operations and management of the HCDC, appeared on behalf of the petitioners (Fore and the HCDC). At the hearing, the petitioners asserted the reason the zoning should be changed was the substantial need for additional industrial space. The County lacked industrial land, particularly larger tracts of land. In addition, the petitioners mentioned the change in the area due to the impact of Hurricane Katrina.

¶5.    In his opening remarks to the Planning Commission, Barrett stated, "We find ourselves in a situation where industrial land in this county has been taken up. It's been sold. We have industries on those properties. That's the emphasis of why we're here today, is the need for additional land." At the conclusion of his remarks, Barnett stated the reason for the

---

[1] Two different spellings of Hessle's name appear in the various hearing transcripts.

3

petition: "So the bottom line is–the reason for our request is a need request. It's a need for additional industrial land."

¶6. Hessle stated that the application for rezoning was being made due to need and that Hurricane Katrina had an impact on the county's industrial land resources, saying, "Obviously, there is a need for more industrial land. We are running out of land. The demand since Katrina has been surpassing anything we had anticipated." In addition, Hessle pointed out that the growth of the county is due north and that Hurricane Katrina has increased the growth in that direction. Furthermore, he stated that Saucier was working on a master plan to accommodate the growth in the area. He also stated that current industrial land is located south of Interstate 10 (I-10), and the county needs industrial sites north of I-10.

¶7. During the Planning Commission's hearing, a number of citizens commented on the proposed rezoning. Edwards argued that an industrial zone is not compatible near agricultural and residential zones. In addition, he, like other citizens, expressed concern about maintaining drinking water quality in the area. Edwards commented that the area is better suited for a housing development. Furthermore, Edwards addressed available land for the industrial park in other parts of the County. Edwards stated "We're asking you not to rezone this from an A-1and a small E-1, because, as I said before, you're going from one end of the spectrum of your zoning chart to the other . . . ., So we're just asking you to consider and deny it and not recommend that the zoning change to I [industrial]. That's basically it."

¶8. Other citizens testified before the Planning Commission. Steve Howard from the Saucier Improvement Association stated:

4

> The Saucier Improvement Association believes that their best position at the moment is to not make a statement for or against the park. But to make it clear that should the park be put in place, we're confident that we can work with the Development Commission and the Board of Supervisors on its use and the possible negative impacts it will have on the community.

However, at least two other citizens stated that the Saucier Improvement Association did not represent them. Other citizens expressed concerns about issues including, but not limited to, water quality, a sewer system, and environmental concerns.

¶9. At the conclusion of the public hearing, the Planning Commission voted to approve the petition to rezone. The Commission specified the basis of the recommendation to approve the petition was "increase[d] needs in sites as demonstrated in the application."

¶10. Edwards filed a written notice of appeal to the Board on September 27, 2006. He alleged at the Board hearing that none of the circumstances required to legally rezone the property existed; that the Board had acted improperly in becoming Fore's "business partner" in the sale and thus was unable to sit as a fair tribunal at the hearing; that other land was available for industrial development; that there would not be sufficient usable land to meet the contract's requirements due to wetlands and an anticipated taking by the Mississippi Department of Transportation (MDOT);[2] (the "seventy-two percent requirement"); the general poor business sense of spending $7.5 million for a parcel of land which contained sizable portions that were unusable, undevelopable and/or would be taken for state use; and

---

[2] The Purchase Agreement required that at least seventy-two percent of the purchased land be suitable for utilization and development and able to be "conveyed free and clear from any and all restriction with regard to coastal wetlands, promulgated by the United States Army Corps of Engineers or any other applicable local, state or federal ordinance, law or regulation."

strong local opposition of residents to building an industrial park in the midst of their homes and farms.

¶11. At the Board hearing, the HCDC again argued the substantial need for additional industrial sites in Harrison County. The HCDC also argued that a change in character of the land sought to be rezoned had occurred subsequent to Hurricane Katrina with the population and industry in Harrison County moving north as a result of Hurricane Katrina. At the conclusion of this hearing, the Board voted unanimously to approve the rezoning.

¶12. Edwards filed a bill of exceptions with the Circuit Court of Harrison County, First Judicial District, on November 14, 2006, and a notice of appeal on November 15, 2006. The trial court considered Edwards's contentions that (1) the Concerned Citizens of Saucier had been denied their right to due process, alleging that the Board had a vested interest in rezoning the land; (2) none of the circumstances required to rezone, including change in the character or public need, applied, and the Board's decision to rezone was arbitrary and capricious; (3) the agreement could not go forward if there was pending litigation or the threat thereof; (4) there was insufficient land available for development; (5) property owners within 150 feet of the proposed rezoning site were not properly notified of the zoning amendment hearing;[3] and (6) the Board erred by failing to allow supplemental exhibits at the Board hearing.[4]

---

[3] While the trial court made a ruling on this issue, Edwards did not assert this assignment of error on appeal, thus, it is considered waived.

[4] The Board quoted Section 903.03 of the Comprehensive Zoning Ordinance for Harrison County, which restricts appeals to the Board of Supervisors to the record made before the Planning Commission.

6

¶13.	After briefing, the circuit court ruled in four of the six assignments of error that Edwards's arguments rested on information or documentation not presented to the Planning Commission and therefore not a part of the record preserved for appellate review. The circuit court declined to consider any additional evidence and found sufficient evidence in the record to support the Board's zoning decision for each of those four assignments of error.

¶14.	On the issue of due process, the trial court determined, in part, that the presumption of honesty and integrity by the Board in its decision was not rebutted. In deciding the issue of whether the Board was capable of rendering an unbiased decision consistent with Edwards's right to due process of law, the circuit court relied upon *Spradlin v. Board of Trustees of Pascagoula Municipal Separate School District*, 515 So. 2d 893 (Miss. 1987). The circuit court stated that, because a presumption of honesty and integrity attached to the Board's decisions, Edwards was required to show members of the Board had a personal or financial stake in the decision, or that personal animosity existed toward the objectors. The circuit court found neither of these. The circuit court further found that, because the County has the right to purchase land and to act through the HCDC to do so, no due process violation occurred. Accordingly, Edwards's due process rights were not violated.

¶15.	In addition, the trial court determined that the Board was not arbitrary or capricious in approving the rezoning. The circuit court stated:

> An applicant for re-zoning carries the burden of proving by clear and convincing evidence (1) that there was a mistake in the original zoning, or (2) that the character of the neighborhood has changed to such an extent as to justify re-zoning, and that there is a public need for the re-zoning. *City of Madison v. Shanks*, 793 So. 2d 576, 578 (Miss. 2000); *City of Biloxi v. Hilbert*, 597 So. 2d 1276, 1280 (Miss. 1992). It is undisputed that there was no mistake in the original zoning. With regard to changed conditions and

7

public need, the Board found that there had been substantial development in the subject area, especially since Hurricane Katrina. The Board further noted that a large tract of land for industrial development would attract manufacturing operations and, in turn, create jobs and general economic development for the citizens of Harrison County.

Appellants claim there are zoned industrial sites in Harrison County with acreage of 148, 119, 93, 72 and 55. This claim is disputed by the Appellee. While such industrial sites might exist, Appellants admit this information was not presented to the Planning Commission and was therefore not considered. Because the information was not before the Planning Commission, it was not made part of the record. Thus, this Court will not consider it on appeal.

The evidence presented to the Planning Commission, which was considered on appeal by the Board, along with the Board's personal knowledge of the subject area, and the needs of Harrison County, support the Board's decision to approve the zoning changes.

In other words, the circuit court determined that the decision by the Board to rezone was supported by substantial evidence.

¶16. Following the trial court's decision, Edwards appealed to this Court.

**DISCUSSION**

¶17. In *Town of Florence v. Sea Lands, Ltd.*, 759 So. 2d 1221, 1223 (Miss. 2000), this Court stated the standard of review for zoning as follows:

This Court has held that zoning is not a judicial matter, but a legislative matter. *Luter v. Hammon*, 529 So. 2d 625, 628 (Miss. 1988). On appeal, the decision of the Board must be upheld unless it is "arbitrary, capricious, discriminatory, or is illegal, or without a substantial evidentiary basis." *Faircloth v. Lyles*, 592 So. 2d 941, 943 (Miss. 1991). Therefore, the decision to rezone will not be disturbed where it is "fairly debatable." *Saunders v. City of Jackson*, 511 So. 2d 902, 906 (Miss. 1987)." "Fairly debatable' is the antithesis of arbitrary and capricious." *Id*.

8

*See also* **Saunders v. Jackson**, 511 So. 2d 902, 906 (Miss. 1987) (this Court held that it "does not review the evidence as it would sitting in review of a civil trial. A 'fairly debatable' decision will be affirmed.") (citations omitted).

¶18.    In **Saunders**, this Court recognized that zoning issues are legislative in function. **Saunders**, 511 So. 2d at 906. "Where, as here, there is substantial evidence supporting both sides of a rezoning application, it is hard to see how the ultimate decision could be anything but 'fairly debatable,' not 'arbitrary and capricious,' and therefore beyond our authority to overturn." **Id**. at 907. *See also* **Citizens Ass'n for Responsible Dev., Inc. v. Conrad Yelvington Distribs.**, 859 So. 2d 361, 368 (Miss. 2003) ("the zoning decision of a local governing body which appears 'fairly debatable' will not be disturbed on appeal and will be set aside only if it appears the decision is arbitrary, capricious, discriminatory, illegal or is not supported by substantial evidence"); **City of Madison v. Shanks**, 793 So. 2d 576, 578 (Miss. 2000) (same). Further, on issues of zoning, this Court has stated "Every zoning case must be decided on the basis of all the circumstances of the particular case." **Howie v. Autrey**, 209 So. 2d 904, 905 (Miss. 1968) (citing **Palazzola v. City of Gulfport**, 211 Miss. 737, 52 So. 2d 611 (1951)).

¶19.    This Court has stated that "[t]he action of the Board of Supervisors in enacting or amending an ordinance, or its action of rezoning, carries a presumption of validity, casting the burden of proof upon the individual or other entity asserting its invalidity." **Faircloth v. Lyles**, 592 So. 2d 941, 943 (Miss. 1991). *See also* **Gentry v. City of Baldwyn**, 821 So. 2d 870, 873 (Miss. App. 2002) ("The decision of a local governing board is presumed valid, and the burden is upon the person seeking to set it aside to show that it was arbitrary, capricious

9

and unreasonable," and to reverse a decision to rezone, the opponents "appealing the decision bear the burden of proving that the decision rendered was arbitrary, capricious, discriminatory, or beyond the legal authority of the city's board or unsupported by substantial evidence").

## I. Whether the Decision to Rezone by the Board of Supervisors Was Arbitrary, Capricious, And/or Unsupported by the Evidence.

¶20. To reclassify property, there must be proof, by clear and convincing evidence, that either: (1) a mistake in the original zoning occurred; or (2) a change occurred in the character of the neighborhood to justify rezoning and a public need. *Town of Florence*, 759 So. 2d at 1224; *Old Canton Hills Homeowners Ass'n v. Mayor and City Council of City of Jackson*, 749 So. 2d 54, 62 (Miss. 1999). *See also Childs v. Hancock County Bd. of Supervisors*, 1 So. 3d 855, 860 (Miss. 2009); *Cockrell v. Panola County Bd. of Supervisors*, 950 So. 2d 1086, 1091 (Miss. App. 2007); *Nichols v. Madison County Bd. of Supervisors*, 953 So. 2d 1128, 1130 (Miss. App. 2006); *Byram 3 Dev., Inc. v. Hinds County Bd. of Supervisors*, 760 So. 2d 841, 844 (Miss. App. 2000).

¶21. Mississippi statutes provide for comprehensive zoning plans for municipalities and counties. Mississippi Code Section 11-1-17(1)(a) provides in part that "The governing authority of each municipality and county may provide for the preparation, adoption, amendment, extension and carrying out of a comprehensive plan for the purpose of bringing about *coordinated physical development in accordance with present and future needs*. . . ." Miss. Code Ann § 11-1-17 (1)(a) (Rev. 2002) (emphasis added). *See also Adams v. Mayor and Bd. of Aldermen of City of Natchez*, 964 So. 2d 629, 633 (Miss. App. 2007). This Court

10

has recognized, however, that a balance must be struck when dealing with rezoning issues, because landowners rely on zoning ordinances when choosing to invest their finances and lives in real property and "[w]ithout the assurance of the zoning ordinance, such investments would not be made." *Mayor and Comm'rs of City of Jackson v. Wheatley Place, Inc.*, 468 So. 2d 81, 83 (Miss. 1985). However, this Court also has stated that "[p]roperly designed, the comprehensive plan contemplates a dynamic community. It recognizes the inevitability of change. Its goal is orderly change, balancing the community's growth needs and the individual's interest in using his property as he sees fit." *Woodland Hills Conservation Ass'n, Inc. v. City of Jackson*, 443 So. 2d 1173, 1179 (Miss. 1983).

¶22. Historically, zoning was implemented and based on health, safety, and general welfare of the community. *Id*.; *City of Jackson v. Bridges*, 243 Miss. 646, 654, 139 So. 2d 660, 663 (1962) (citing Rhyne's Municipal Law, Zoning and Planning, § 32-2, p. 812). In *Bridges*, this Court stated "Again Rhyne also points out: 'Zoning is not static, and zoning restrictions are subject to change. Thus, a municipality may amend its zoning ordinance whenever it deems conditions warrant such change.' *Ibid*. 821-2." *Bridges*, 139 So. 2d at 663.

¶23. Neither Edwards nor the Board asserted that a mistake in the original zoning had occurred in this case. However, Edwards contests the second prong of the zoning criteria that there was evidence of a change in the character of the neighborhood and public need. Edwards contends that no evidence was presented to show a change in the character of the neighborhood or public need. We disagree.

**A.     Change in the neighborhood.**

11

¶24.    In ***Town of Florence v. Sea Lands, Ltd.***, 759 So. 2d 1221, 1227 (Miss. 2000), this Court stated "it is impossible to articulate or design a particular test for determining what is sufficient evidence to show a material change and a public need to support rezoning." In the context of change in the character of the neighborhood, this Court generally has limited its view of what constitutes a "neighborhood." More recently however, in ***Kuluz v. City of D'Iberville***, rezoning was affirmed where a change in the character of the neighborhood was at issue. ***Kuluz v. City of D'Iberville***, 890 So. 2d 938, 942 (Miss. Ct. App. 2004), *cert. denied*, 2005 Miss. LEXIS 9 (Miss., Jan. 6, 2005). In its analysis, the Court of Appeals upheld in part the circuit court's affirmance of the City of D'Iberville's rezoning for a "neighborhood" that consisted of an area that comprised the whole portion of the City located north of Interstate 10. ***Id***. at 940. The area of land considered was equivalent to approximately twenty-five percent of the entire city's land mass. ***Id***. Conversely, Kuluz's argument that the neighborhood comprised a much smaller portion, only one-third of the northern portion of the city, an area mainly rural in nature, was rejected. ***Id***. at 940-41.

¶25.    While the Mississippi courts have analyzed rezoning more frequently in the context of municipal rezoning rather than county rezoning, the most recent rezoning decision pertains to the rezoning of a county and, like the case before us today, a county located on the Gulf Coast. ***Childs v. Hancock County Bd. of Supervisors***, 1 So. 3d 855 (Miss. 2009). In ***Childs***, this Court affirmed the rezoning of 1,000 acres of coastal land to a commercial resort classification. ***Childs***, 1 So. 3d at 862. The Board of Supervisors adopted the Planning Commission's findings, but made no additional findings of its own. ***Id***. at 860. The Planning Commission determined that "conditions had changed in and around the area sought to be

12

rezoned which made an amendment necessary and desirable and in the public interest." *Id*. Further, this Court determined that, in making its decision, the Board of Supervisors had properly considered its own familiarity and common knowledge of the area sought to be rezoned. *Id*. (citing *Faircloth v. Lyles*, 592 So. 2d 941, 943 (Miss. 1991)); *Builders, Inc. v. Moore*, 475 So. 2d 153, 153-55 (Miss. 1985); *Board of Aldermen of Town of Bay Springs v. Jenkins*, 423 So. 2d 1323, 1327 (Miss. 1982). This Court reiterated that "the reviewing court is concerned only with the reasonableness of the administrative order, not its correctness." *Id*. (quoting *Citizens Ass'n for Responsible Dev.*, 859 So. 2d at 367).

¶26. Hurricane Katrina made landfall on August 29, 2005. The impact of this natural disaster on the State of Mississippi and, more significantly, on the Gulf Coast of Mississippi, is a phenomenon that cannot be ignored in the case before the Court today. Indeed, the whole world, let alone the Harrison County Board of Supervisors, was on notice of the devastation and destruction the citizens and land of the Mississippi Gulf Coast suffered from Hurricane Katrina.

¶27. This case is distinguishable from *Childs* to the extent that, in that case, the county initiated zoning proceedings *prior* to Hurricane Katrina. *Childs*, 1 So. 3d at 857. Therefore, the decision in *Childs* to allow rezoning was not based on the impact of Hurricane Katrina. Unfortunately, in the intervening time period between the commencement of Hancock County's rezoning and the commencement of Harrison County's rezoning, Hurricane Katrina literally flattened portions of the Gulf Coast. The testimony at the hearings revealed that Hurricane Katrina had significantly changed Harrison County on a number of levels. However, as the following testimony highlights, in part, Hurricane Katrina jettisoned the

13

growth of Harrison County from south of Interstate I-10 to north of Interstate I-10. Pursuant to Mississippi caselaw, it is appropriate for the Board to consider information provided at the hearing and its own common knowledge and familiarity with the affected area. *Id*. at 860.

¶28. Bill Hessle, director of operations and property management, testified at the Planning Commission hearing. He stated that, apart from having the benefit of jobs and taxes, the site was chosen for other reasons. Hessle stated:

> **Also, we had another reason, the growth of the county is due north. I think that's been sped up a little bit because of Katrina.** Obviously, the Saucier Community is working on a master plan to try to handle this growth in the future. Of course, we commend them for that effort, too. Because this is where the population is heading we think. And of course, with the growth to the north, jobs are going to be necessary in that location. And we feel this would be an asset to that growth.

(Emphasis added.)

¶29. In addition, at the appeal before the Board, Larry Barnett, Executive Director for the Harrison County Development Commission, stated:

> The other thing that I would say on my part, as far as need is, it needs to be . . . a park needs to be in an area that can accommodate the growth. And, generally, if you look, a rural area that is growing, that we're in . . . that grow [sic] this definitely headed that direction, up Highway 49, up that railway line. **It has definitely been moving that direction for the past few years and probably has been enhanced by the . . . by the fact that this storm came last year. Unfortunate as that storm is, it is . . . it has moved the growth to the north.**

(Emphasis added.) Also, at the appeal before the Board, Hessle stated:

> I'm just going to briefly add, as is stated, obviously the most important thing and the reason we're here today is what does your ordinance say it takes to change a piece of property. And if you look at your ordinance in Section 906.01, it does talk about potential changes are based on need and also on changing character as mentioned by the appellant. In what we . . . in what I handed you out, you can kind of follow. It briefly just talks strictly about this,

14

In Section 906.01.02, it specifically says that a change or change in condition in a particular area or the county, in general, make an amendment of this ordinance necessarily desirable.

. . .

**As discussed in the previous hearing, and you'll see throughout the transcript and stuff, there was discussions about Katrina's effect on the area in South Mississippi. Um . . . as you know, the . . . uh . . .because of the storm, industries and businesses are looking to the north. And this has changed the whole character of this county because before the interest was south of I-10. Now, the interest is north of I-10.** And it's happened because of potential storm surge that is available to changing (inaudible). The insurance market out there is changing drastically for these businesses and these industries. They have to locate in areas that are more favorable to not be damaged by storm surge and stuff, so that's changed, obviously, the desire in the county. The new highways we've discussed are in transit, 67, 49, potential 601, which we did bring up in the previous testimony, you'll see some references to 601. The problem about 601 is there's six or seven different alternatives out there. There's no funding for it yet. It's just . . . it's proposed. So, obviously, we don't even know if that's ever going to happen.

The other thing changing out here is going to be water and sewer in the north part of the county. It's going to open up all kinds of potential growth once water and sewer hits. Um . . . and that is going to be funded in the near future. There's studies and, at least, over $500,000,000.00 appointed to build these water and sewer facilities. Um . . . and of course, the other thing is land value. We all know that land values to the north . . . the south has changed because of casinos primarily (inaudible) on the south side is running the land value up so the north of the interstate, the land values are better situated. All of those points I'm trying to make is telling that it is obviously a change in the growth that's to the north and that's where we propose to put the park.

(Emphasis added.)

**B.    Public need**.

¶30.    In addition, the Planning Commission and the Board both heard evidence of public need for rezoning. At the Planning Commission hearing, Larry Barnett, executive director of the HCDC, stated that there was a need for industrial land. Barnett said " We find ourselves in a situation where industrial land in this county has been taken up. It's been sold.

15

We have industries on those properties. That's the emphasis of why we're here today, is the need for additional land."

¶31. Bill Hessle also spoke before the Planning Commission on the issue of public need. He stated that the county had a shortage in available industrial land. He said the demand for industrial land had increased since the impact of Hurricane Katrina. In addition, he said the county needed to have industrial land available in order to be competitive with adjoining counties and states. Furthermore, Hessle stated that most of the former industrial land was located south of Interstate I-10, however, the county now had a need for an industrial site north of Interstate I-10 with all the growth to the north of the county. Moreover, Hessle stated that the county had no large tracts of land available to accommodate the industrial park south of I-10, and that the cost of land in that area is five or six times higher than land in the northern part of the county.

¶32. Barnett also spoke before the Board on the issue of need. He explained that there was a need for large parcels of land. These large parcels would make the area more competitive to companies. The HCDC chose the land in Saucier for a number of reasons, he said. This land had highway access and was near a railway line.

¶33. While Hessle acknowledged that other industrial parks are located in the county, he said these parks are controlled by various cities and little land is available in those parks. The county had only one industrial park under its control in Long Beach, he said. The Long Beach park was zoned I-1, therefore, the county lacked land zoned I-2. He expressed a need for the county to have industrial land that it controls and can market. Hessles also noted that

16

Hurricane Katrina changed the area, growth, and the nature of development in the county, prompting a need for rezoning.

¶34. The Planning Commission voted to allow the zoning change based on the evidence provided it. The Board relied on the evidence provided to the Planning Commission and the evidence provided at the appeal hearing and affirmed the Planning Commission's findings. While much of the hearing focused on the need for rezoning, evidence was provided about a change in the character of the land. Opponents to the rezoning also were permitted to express their reasons for disapproval of the rezoning at the rezoning hearing and appeal before the Board.

¶35. In addition, the Board may rely on its own knowledge and familiarity with the affected land. *Childs*, 1 So. 3d at 860. This Court has stated:

> We emphasize that whenever zoning authorities act on the basis of their general knowledge of their community or on the basis of any other information obtained other than "from the parties," they should clearly so state. In order that we might effectively perform our judicial review responsibilities, it is vital that we be [reliably] informed of all bases of the decision of the zoning authorities.

*Woodland Hills*, 443 So. 2d 1182 n.8 (quoting *Bd. of Aldermen of Town of Bay Springs v. Jenkins*, 423 So. 2d 1323, 1327-1328 (Miss. 1982)). The impact of Hurricane Katrina on the area was an underlying concern, and indeed, a significant factor in the change that had occurred in the area sought to be rezoned, as noted in testimony before the Planning Commission and the Board. The Board implemented proper procedures for determining the rezoning of the area. The Board affirmed the Planning Commission's determination that the

17

affected area should be rezoned. The circuit court affirmed the Board's decision, in part, due to the changed conditions since Hurricane Katrina.

¶36.   This Court has stated:

> [A]ll presumptions must be indulged in favor of the validity of zoning ordinances. It is presumed to be reasonable and for the public good. It is presumed that the legislative body investigated it and found conditions such that the action which it took was appropriate. The one assailing the validity has the burden of proof to establish that the ordinance is invalid or arbitrary or unreasonable as to his property, and this must be by clear and convincing evidence.

*Childs*, 1 So. 3d at 861 (quoting ***Ballard v. Smith***, 234 Miss. 531, 546-547, 107 So. 2d 580 (1958)).  Further, this Court has held that *all circumstances* of an individual case should be considered when deciding a case.  ***Howie***, 209 So. 2d at 905.  As an appellate court, our task "is to determine whether the circuit court erred in its judicial review of whether the Board's decision to rezone was arbitrary and capricious and unsupported by substantial evidence." *Childs*, 1 So. 3d at 860.  Our role is to verify the existence of substantial evidence, not reweigh the evidence.  *Id*. at 861.  "Furthermore, 'If the Board's decision is founded upon substantial evidence, then it is binding upon an appellate court, i.e., the Circuit Court, the Court of Appeals and this Court.'" *Id*. (quoting ***Perez v. Garden Isle Cmty. Ass'n***, 882 So. 2d 217, 220 (Miss. 2004)).  Based on the record before this Court and acknowledging that the Board was well aware of the impact of Hurricane Katrina on Harrison County, this Court cannot say that the Board's decision to rezone in this case was arbitrary or capricious. Further, substantial evidence was before the Board to support its decision to rezone and, thus, the decision was fairly debatable, and cannot be disturbed by this Court on appeal.

**II.     Due process.**

18

¶37. The trial court ruled on Edwards's contention that he was denied his right to due process of law because the zoning authorities (the Board) were a party to the Purchase Agreement. The trial court determined that a presumption of honesty and integrity attached to the Board's decisions. To overcome this presumption, Edwards was required to show that members of the Board had a personal or financial stake in the decision, or that personal animosity existed toward the objectors. Finding that Edwards failed to meet this burden, the circuit court determined that no due process rights had been violated. However, this particular issue was not presented to the Planning Commission, therefore, the contract does not constitute a part of the official record and the issue was not preserved for appeal. Accordingly, this Court declines to address this issue.

## CONCLUSION

¶38. For the reasons stated, we affirm the decision of the Circuit Court of Harrison County, First Judicial District, to affirm the decision of the Harrison County Board of Supervisors and the Planning Commission to allow rezoning.

¶39. **AFFIRMED**.

**CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR AND CHANDLER, JJ., CONCUR. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J., AND KITCHENS, J.**

**WALLER, CHIEF JUSTICE, DISSENTING:**

¶40. Because I respectfully disagree with the majority that there is any evidence of a change in the character of the neighborhood to be rezoned, I respectfully dissent.

19

¶41. Zoning laws were first enacted in Mississippi in 1924. *See* 195 Miss. Laws (1924). Issues of rezoning were first addressed by this Court in the 1950s in *Holcomb v. City of Clarksdale*, 65 So. 2d 281 (Miss. 1953). In that case, the Court recognized that the zoning statutes did not offer guidance as to the various burdens of proof or what facts should be considered when rezoning property. Beginning with *Holcomb*, this Court set out the legal requirements for rezoning and by 1968, those requirements were firmly and unquestionably established:

> Accordingly it is a firmly established rule that before a zoning board reclassifies property from one zone to another, there should be proof either (1) that there was a mistake in the original zoning, or (2) that the character of the neighborhood has changed to such an extent as to justify reclassification.

*Martinson v. City of Jackson*, 215 So. 2d 414 (Miss. 1968).

¶42. This has remained the legal standard until the present day. *See Childs v. Hancock County Bd. of Supervisors*, 1 So. 3d 855, 859-60 (Miss. 2009); *Bridge v. Mayor and Bd. of Alderman, City of Oxford*, 995 So. 2d 81, 83 (Miss. 2008); *Town of Florence v. Sea Lands, Ltd.*, 759 So. 2d 1221, 1224 (Miss. 2000); *McWaters v. City of Biloxi,* 591 So. 2d 824, 827 (Miss. 1991); *Bd. of Alderman, City of Clinton v. Conerly*, 509 So. 2d 877, 883 (Miss. 1987); *Mayor and Comm'rs of Jackson v. Wheatley Place, Inc*., 468 So. 2d 81, 83 (Miss. 1985); and *Oxford v. Inman*, 405 So. 2d 111, 113 (Miss. 1981).

¶43. The burden of proof rests upon the party seeking to rezone property. That party must show by clear and convincing evidence that an error in zoning has occurred, or that there has been a substantial change in the character of the neighborhood, with a concomitant public

20

need for rezoning. *Cloverleaf Mall*, 387 So. 2d at 740. *See also* *Sea Lands,* 759 So. 2d at 1224; *Wheatley Place*, 468 So. 2d at 83; and *Inman*, 405 So. 2d at 113.

¶44. Although the vast weight of our precedent deals with challenges to municipal zoning ordinances, the same standard applies to ordinances enacted by county boards of supervisors. *See* *Byram 3 Dev., Inc. v. Hinds County Bd. of Supervisors*, 760 So. 2d 841 (Miss. 2000); *Faircloth v. Lyles, Hinds County Bd. of Supervisors, et al.,* 592 So. 2d 941 (Miss. 1991); *Nw. Builders, Inc. and Bd. of Supervisors of DeSoto Co. v. Moore,* 475 So. 2d 153 (Miss. 1985); *Bd. of Supervisors of Hinds County v. Roberts*, 287 So. 2d 436 (Miss. 1973); *Hinds County Bd. of Supervisors v. Covington*, 285 So. 2d 143 (Miss. 1973); *Moore v. Madison County Bd. of Supervisors*, 227 So. 2d 862 (Miss. 1969); *Howie v. Autrey, Harrison and Bd. of Supervisors of Hinds County,* 209 So. 2d 904 (Miss. 1968); *Ridgewood Land Co., Inc. and Bd. of Supervisors of Hinds County v. Simmons*, 137 So. 2d 532 (Miss. 1962). In deciding cases dealing with county rezoning issues, this Court has not hesitated to cite and rely upon caselaw addressing municipal zoning issues, as the cases above show. It is clear that there is no distinction in the legal elements or application of those elements when the zoning authority in question is a county board rather than a municipal authority.

¶45. The majority effectively has omitted the requirement that a change occur in the character of the neighborhood to be rezoned before rezoning is permissible. In essence, the majority finds that changes in the overall county are sufficient to satisfy this requirement. This is a complete departure from existing authority.

¶46. This Court consistently has applied the same standard for reviewing whether there has been substantial change in the character of the neighborhood. For purposes of rezoning, "the

21

neighborhood" consists of the specific piece of property sought to be rezoned and its immediate/adjoining surroundings. *See Childs*, 1 So. 3d at 859-60 (conditions changed in and around the area sought to be rezoned); *Byram 3 Dev.*, 760 So. 2d at 844 (subject property and immediate area). *See also Town of Florence v. Sea Lands, Ltd.*, 759 So. 2d 1221 (Miss. 2000) (area proposed to be rezoned and surrounding areas); *Fondren N. Renaissance v. Mayor and City Council of Jackson*, 749 So. 2d 947 (Miss. 1999) (area proposed to be rezoned and surrounding area); *Jitney Jungle, Inc. v. City of Brookhaven*, 311 So. 2d 652 (Miss. 1977) (subject property and surrounding properties); *Cockrell v. Panola Co. Bd. of Supervisors*, 950 So. 2d 1086 (Miss. Ct. App. 2007) (area to be rezoned and areas surrounding the subject property).

¶47.   More importantly, this Court has stated on more than one occasion what a neighborhood is *not.* Changes in the character of the land two miles away from the subject property are not in the subject property's neighborhood. *Wright v. Mayor and Comm'rs of City of Jackson*, 421 So. 2d 1219, 1223 (Miss.1982).  Rezoning for the benefit of the community-at-large does not meet mistake or change rezoning requirements. *Sullivan v. Bay St. Louis*, 375 So. 2d 1200, 1201 (Miss. 1979).  Changes in character located a half mile from the subject property are not in the neighborhood. *Cockrell*, 950 So. 2d at 1094 ("because this business is approximately one-half mile away from the Martin's property, and all of the land surrounding the Martin's is zoned agricultural according to the maps in the record, **we do not consider it in the same "neighborhood" as the Martin's property**.") (emphasis added).

¶48. The majority quotes portions of statements given by the HCDC at both the Planning Commission hearing and Board of Supervisors hearing to support its assertion that there has been a change in the character of the neighborhood. Respectfully, I disagree that the quotations support any such conclusion. Each deals specifically with changes in demographics of the county *as a whole* that have occurred since Hurricane Katrina and the need for large industrial sites for development.

¶49. For purposes of rezoning, the alterations in the county generally are irrelevant considerations. This Court previously has rejected the argument that rezoning to benefit the community-at-large should be permitted. **Sullivan**, 375 So. 2d at 1201. It is questionable whether, under the present circumstances, Saucier would consider itself the same community as Gulfport or Biloxi, even if such a standard were legally permitted. However, the law does not gauge the need of the community; it measures the changes in a given neighborhood, of which there are usually many within any community.

¶50. Regardless, this Court has never looked to the county (or the community) as a whole, but specifically and only to the property in question and its surrounding areas to determine whether or not a change in character has occurred. Here, no evidence was given, nor was there any argument to that end. The statements relied upon by the majority speak solely to the general shift to the north of Interstate 10 of people and business, an area which constitutes the vast majority of the county, not merely the Saucier neighborhood.

¶51. No evidence of any change in the character of the Saucier neighborhood was offered. The HCDC argued only that there was a need for more industrial space. When specifically asked at oral argument what change in the neighborhood justified rezoning, the HCDC stated

23

the need was the change. With all due respect, this is an impermissible conflation of two separate and distinct requirements and should not be permitted to contravene firmly established legal requirements, particularly where no party to this litigation has asked for such an exception to be applied.

¶52. The need to restrict the change to the immediate property and its surrounding area likely stems from the acknowledgment by this Court of the importance of the significant investment people make in their property, often based upon extant zoning:

> Purchasers of small tracts of land invest a substantial portion of their entire lifetime earnings, relying upon a zoning ordinance. Without the assurance of the zoning ordinance, such investments would not be made. On this small area they build their homes, where they expect to spend the most peaceful, restful and enjoyable hours of the day.

*Wheatley Place, Inc.*, 468 So. 2d at 83 ("It should also be borne in mind, however, that while a duly enacted comprehensive zoning ordinance is not a true protective covenants agreement, it bears some analogy."); *Sea Lands*, 759 So. 2d at 1228-29; and *Conerly*, 509 So. 2d at 885-86.

¶53. For this reason, the presumption of validity given original zoning decisions is not applied to the same degree in cases of rezoning. *Sea Lands*, 759 So. 2d at 1227; *Conerly*, 509 So. 2d at 883; *Sullivan*, 375 So. 2d at 1201-02; *Lewis v. City of Jackson*, 184 So. 2d 384, 387-88 (Miss. 1966).

¶54. Since original zoning ordinances are deemed more or less permanent and analogous to protective covenants, this Court presumes original zoning decisions were made thoughtfully and with an eye toward both present and future needs. *Sea Lands*, 759 So. 2d at 1225; *Broadacres, Inc. v. City of Hattiesburg*, 489 So. 2d 501, 503 (Miss. 1986).

24

Decisions to change those ordinances shortly after they have been enacted are suspect. *Sea Lands*, 759 So. 2d at 1225. The Saucier zoning ordinances were enacted in 2000, and a mere five years passed between that enactment and the first attempt to change it, an attempt identical to that before us. The HCDC/Fore petition therefore falls squarely within the suspect category previously recognized by this Court.

¶55. This concern becomes even more obvious and pressing in a case like that before us. In the present case, the only evidence before either the Planning Commission or the Board of Supervisors was that there was no change in the character of the neighborhood in question and that all current uses are consistent with its existing zoning, residential and agricultural. The zoning change requested catapults the use of this land from one of the most restrictive (residential and light agricultural) to the least restrictive (I-2 industrial) category.

¶56. Under current zoning regulations for the County, an I-2 zoned area permits establishment as of right of the following types of land uses: junkyards (including autos); gravel pits; fertilizer manufacturing and processing; foundries; meat slaughtering and packing houses, petroleum and petroleum product manufacturing, plastic products manufacturing; stockyards; solid waste and/or recycling companies and transfer stations; asphalt manufacturing plants; concrete manufacturing plants; paint, oil, shellac and lacquer manufacturing; wood preserving by creosote impregnation treatment plants; auto and truck cleaning; auto and motorcycle race tracks; chemical manufacturing; and poultry processing. All of these endeavors necessarily include traffic, pollutants, noise and/or odor problems for the residents of this neighborhood.

¶57.    Also permitted as of right are drinking establishments, which includes by definition (in the Harrison County zoning ordinances) private clubs.  Since I-2 zoning permits these uses "by right," no additional authority would be necessary to establish such facilities; they could simply exist in the middle of residential property.

¶58.    As the majority notes, Hurricane Katrina had a substantial impact on Harrison County, including Saucier.  The majority's conclusion ignores that Saucier citizens are as entitled to legal protection as those in any other area of the county.  The legal mechanisms by which this Court has always measured proposed zoning changes are being setting aside, without request by any party or explanation by the majority, in favor of making Saucier the metaphorical sacrificial lamb to the changes Katrina has wrought.  The majority's conclusion that rezoning the Saucier property is in the best interests of Harrison County contradicts established law and provides a remedy neither sought nor argued for by any party.

¶59.    Even if the vague and general statements of a demographic shift in the county from south to north were sufficient to establish two-thirds of Harrison County as "a neighborhood," the majority also ignores that there exists no evidence of actual change.  In the past, this Court has looked to the uses being made of the subject property and its environment, whether those uses constitute a change from prior uses and, if so, how much of a change.

¶60.    In determining whether there has been substantial change in a neighborhood, our appellate courts have looked to zoning changes in the adjacent areas (*McWaters v. City of Biloxi*, 591 So. 2d 824 (Miss. 1991) and *Woodland Hills Conservation Ass'n, Inc. v. City of Jackson*, 443 So. 2d 1173 (Miss. 1983)); substantial deterioration of a neighborhood

26

through increased crime and troublesome activity (***Walters v. City of Greenville***, 751 So. 2d 1206 (Miss. Ct. App. 1999)); and similar other concerns. Changes ordinarily must be shown by comparable evidence, such as maps establishing previously-rezoned areas in the neighborhood; statistical changes, including quantification of nonconforming commercial or industrial usage; or even a showing that the zoned use had receded, though not necessarily replaced by a nonconforming usage. ***Sea Lands***, 759 So. 2d at 1227.

¶61.	This Court has held that in the absence of such "comparable evidence, there can be no showing of a material change in the neighborhood." ***Sea Lands***, 759 So. 2d at 1227-28. *See also **Cockrell***, 950 So. 2d at 1095.

¶62.	We also have held that one or two instances of nonconforming use or minimal alteration to surrounding areas does not qualify as substantial change. ***Wright v. City of Jackson***, 421 So. 2d 1219 (Miss. 1982) (holding that minimal new commercial use in area and recent construction of interstate highway two miles away do not constitute substantial change in character). *See also **Cockrell***, 950 So. 2d at 1096.

¶63.	In the present case, there is no question that no evidence was presented to any fact-finder below that any change at all had occurred in or around the Saucier property at issue. The basis of the petition to rezone was, by the petitioner's own statements, need and need alone:

> I wanted to talk about the need for this park because that's what the whole basis of this application is based on is need.

> Obviously, there is a need for more industrial land. We are running out of land. The demand since Katrina has been surpassing anything we had anticipated.

Also, if you'll see, all of this [existing] industrial land is basically south of I-10.  Obviously, there's a need with the growth to the north, there is a need to have industrial sites north of I-10.

¶64.   Need is but one element necessary to rezone, and it is insufficient alone to permit rezoning in the absence of substantial change to the neighborhood (of which the HCDC provided no evidence whatsoever).  To the contrary, the only relevant evidence provided for the area in question is that it continues to be used for residential and agricultural purposes.  Use in conformity with existing zoning simply does not constitute a change in character.  *Wheatley Place*, 468 So. 2d at 84; *Inman*, 405 So. 2d at 113; *Jitney Jungle*, 311 So. 2d at 654;  *Martinson*, 215 So. 2d at 418.

¶65.   The HCDC neither argued nor presented any evidence of a change in the character of the neighborhood.  Neither the Planning Commission nor the Board of Supervisors made any findings of fact or even unsupported conclusions that there had been a change in the character of the neighborhood, nor is there any evidence to support such findings, had they been made.  In the absence of such findings, this Court is bound by rule of law to find the Board of Supervisors' approval of the petition to rezone arbitrary and capricious.  *Conerly*, 509 So. 2d at 884 (citing *Lewis*, 184 So. 2d at 387; and *Martinson*, 215 So. 2d at 417-18).

¶66.   I respectfully dissent.

   **GRAVES, P.J., AND KITCHENS, J., JOIN THIS OPINION.**

28